THE CANAL NATIONAL BANK OF PORTLAND
AND ARTHUR J. CONLEY, EXECUTORS,

*vs.*

BOYD L. BAILEY, INHERITANCE TAX COMMISSIONER.

Cumberland.   Opinion, February 17, 1947.

*Frank D. Marshall,* for plaintiffs.

*Ralph W. Farris,* Attorney General,

*Nunzi Napolitano,* Assistant Attorney General, for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, JJ.

FELLOWS, J.   This is a petition in equity, under R. S. 1944,

Ch. 142, Sec. 30, to the Probate Court in Cumberland county for abatement of inheritance tax. The case comes to the Law Court on report by agreed statement.

The petitioners, Canal National Bank and Arthur J. Conley, are coexecutors under the Will of George S. Hobbs late of Portland, who died testate June 2, 1945. Arthur J. Conley is also a legatee and devisee under the Hobbs Will.

George S. Hobbs had two daughters, Eleanor M. Conley and Margarett H. James. Arthur J. Conley had been the husband of Eleanor M. Conley, who died before the testator in January, 1944. Margarett H. James is living. Arthur J. Conley married again December 9, 1944. George S. Hobbs executed his last will on December 20, 1944, and died June 2, 1945. The will was probated June 19, 1945.

By this will George S. Hobbs bequeathed and devised to Arthur J. Conley "my son in law" certain properties computed by the Inheritance Tax Commissioner as having a value of $45,083.25 in excess of $500 exemption. This included his half interest as devisee and residuary legatee. The other residuary legatee was the daughter, Margarett H. James.

Under date of April 3, 1945 the Commissioner assessed on Arthur J. Conley an inheritance tax at the rate of ten per cent, to wit, a tax of $4,508.12.

Rev. Stat. 1944, Chap. 142, Sec. 3, provides:

"Property which shall so pass to or for the use of the following persons who shall be designated as Class A, to wit: husband . . . wife or widow of a son or husband or widower of a daughter of a decedent shall be subject to a tax upon the value thereof, in excess of the exemption hereinafter provided, of two per cent (2%) of such value in excess of said exemption as does not exceed $50,000 . . ."

R. S. 1944, Ch. 142, Sec. 5, provides:

"Property which shall so pass to or for the use of any person not falling within either of the classes hereinbe-

fore set forth (Class A, above and Class B, collaterals) shall be subject to a tax . . . in excess of an exemption of $500.00, of ten per cent (10%) of such value in excess of said exemption as does not exceed $50,000 . . ."

Under the facts set forth in this case the question for decision is, whether Arthur J. Conley, mentioned and identified by the testator as "my son in law," is a person to be designated Class A in above Sec. 3 of Chap. 142 of the R. S. of 1944, as the "widower" of Eleanor Conley, and subject to a tax of 2%, or $901.66; or should he be classified as a person falling within the provisions of Class C, as provided in above Sec. 5 of Chap. 142, and subject to the tax at the rate of 10%, as determined and assessed by the commissioner. This is not a case where an exemption is claimed. A tax is admittedly due, and the amount only is in controversy.

The petitioners claim that Arthur J. Conley is the "widower of a daughter of the decedent," and hence is in Class A and subject to a tax at the rate of 2% only; that "widower" as used in the statute, is a descriptive word to identify the person, and not a word to describe the state or condition of that person.

The defendant commissioner contends that Arthur J. Conley, being married and having a wife living at testator's death, is not a "widower" and, therefore, is not the "widower" of his former wife, the testator's daughter.

The statutory rule for the construction of statutes is that "words and phrases shall be construed according to the common meaning of the language." Rev. Stat. 1944, Chap. 9, Sec. 21, I. The common meaning of the word "widower" is "a man who has lost his wife by death and has not married again," "a man whose wife is dead." Webster's *New International* (1935); *Bouvier's Law Dictionary* (Rawles Third Revision); *Words and Phrases; Solon* v. *Holway,* 130 Me., 415, 157 A., 236. In common, colloquial, and accepted use, the word "Widower" refers to a man whose wife is dead. This common meaning is

firmly opposed to the contention of the petitioners that the word is descriptive, and may describe a man who is now or was previously a widower. It would have to be used in a figurative sense only to give it the meaning here requested. A man ceases to be a widower when he marries again. Had he not again married until after the death of the testator he would, at the time of the testator's death, have been the widower of the deceased daughter within the meaning and contemplation of the statute. *Solon* v. *Holway*, supra, 130 Me., 415, 157 A., 236; *Commonwealth* v. *Powell*, 51 Penn., 438.

At the time when the property of the decedent passed by his will to Arthur J. Conley, Arthur J. Conley was not the husband of the testator's daughter. The daughter was dead. He was not the widower, because he was again married.

The right to be considered the widower of testator's deceased daughter did not attach to Arthur J. Conley at the time of the testator's death, for the reason that at that time he had a wife living.

Many cases throughout the country, in construing the words "widow" and "widower," have held that in the event of re-marriage certain statutory rights remain. A study of such cases reveals, in most instances, that the right had attached, and would not be lost by subsequent marriage. Other cases involve rights that became fixed at the moment when a person became a widow or widower, and the right could not be divested. The case of *Ray's Estate* (1895) 35 N. Y. S., 281 seems to be one case that supports the petitioners' claim, but this case disregards well-established and accepted definitions, and is in contradiction of the rule in *Solon* v. *Holway*, supra. See also *Commonwealth* v. *Powell*, supra, 51 Penn., 438; *Words and Phrases* (1940 Perm. Ed.), where authorities are collected, and 68 *Corpus Juris*, 263, "Widow," "Widower."

The petitioners say that "to place" Arthur J. Conley in Class C instead of Class A is, in effect, imposing a penalty on marriage and restraints on future marriages. With this statement we

318

disagree. Neither the Court nor the legislature "place" Arthur J. Conley or "impose" on him any restraint or penalty. He was at one time the widower of the testator's deceased daughter. He saw fit to change his condition, and he changed it before the testator died. In fact, his status was changed, and by himself, before the Will was ever made. The tax was determined correctly by the commissioner and according to law.

*Case remanded to Probate Court for Denial of Abatement and Dismissal of Petition.*