C. W. FOOTE, FOR HIMSELF AND ALL OTHER TAXPAYERS OF ADAMS COUNTY, NEBRASKA, APPELLANT, V. COUNTY OF ADAMS, NEBRASKA, ET AL., APPELLEES.

80 N. W. 2d 179

Filed December 21, 1956. No. 34025.

Bert L. Overcash, Bruckman & Brock, and Woods, Aitken & Aitken, for appellant.

Webb, Kelley, Green & Byam, Melvin K. Kammerlohr, and Kirby, Simons, McDonnell & Kirby, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

In this action plaintiff is a taxpayer suing for himself and all other taxpayers of Adams County. The

defendants are the County of Adams and the seven members of the county board of supervisors. The defendants will hereinafter be referred to as the county or the county board, as the case may be.

Plaintiff seeks to enjoin the county from purchasing and paying for a blanket bond from Western Surety Company covering any person elected to county office who is required by statute to furnish an official bond. The Western Surety Company will hereinafter be referred to as the company.

Other issues presented need not be determined in this appeal.

The defendants by answer alleged that the blanket bond involved complied with the statutes and furnished complete protection to the county. They pleaded other matters not involved in the question determined here.

The trial court held that the blanket bond when approved by the appropriate officers constituted a good and sufficient bond for each of the officers participating therein, and rendered judgment for the defendants.

Plaintiff appeals.

We reverse the judgment of the trial court and direct a judgment in accord with this opinion.

On July 7, 1954, the county board by motion provided that "we purchase the $5000.00 Blanket Position Bond from the Western Surety Co., * * * on all officials and employees with an excess" on certain official positions "at a four year price of $2181.87."

The bond bearing the original date of July 27, 1954, is in evidence. It carries a rider that its date shall be changed to read December 24, 1954. This rider, apparently filed with the bond, was countersigned December 28, 1954, at Sioux Falls, South Dakota.

The bond on its face provides:

"KNOW ALL MEN BY THESE PRESENTS:

"That the WESTERN SURETY COMPANY, a corporation duly licensed to do business in the State of Nebraska as Surety, does hereby indemnify County of

Adams, State of Nebraska as Obligee, for the use and benefit of County of Adams, State of Nebraska as Insured, against any loss, the amount of indemnity as to each officer or Employee not to exceed Five Thousand and no/100 ($5,000.00) DOLLARS, (and in such additional amount as to any Officer or Employee or Position as endorsed on the back of this bond as Additional Indemnity Endorsement, or as hereafter added or changed by Rider signed by the Surety and accepted by the Obligee or Insured), caused by any Officer or Employee of the Insured as herein stated:

"Section 1. If the Officer or Employee is required by law to furnish a bond in the position with the Insured, any loss caused through the failure of such Officer or Employee to faithfully perform his duties or to account properly for all moneys and property received by virtue of his position.

"Any and all provisions required by statute, law, rule or regulation as provisions of the bond of each such Officer or each such Employee, are hereby incorporated herein and made a part hereof.

"Section 2. If the Officer or Employee is not required by law to furnish a bond in the position with the Insured, any loss caused through any act of fraud, larceny, forgery, theft, embezzlement, wrongful abstraction, willful misapplication or willful misappropriation, or other fraudulent or dishonest acts committed by such Officer or Employee,

"SUBJECT, HOWEVER, TO THE FOLLOWING CONDITIONS AND LIMITATIONS:

"Section 3. The term of this bond begins with the 6th day of January, 1955.

"Section 4. Regardless of the number of years this bond shall continue in force and the number of premiums which shall be payable or paid, the liability of the Surety under this bond on account of any one Officer or Employee as specified in Section Two hereof shall not be cumulative in amount from year to year or from

period to period. As to any one Officer or Employee specified in Section One hereof, the coverage shall be cumulative as to each elected or appointed term.

"Section 5. This bond shall be deemed canceled as to any Officer or Employee: (a) as to Officers or Employees specified in Section One, in the manner provided by statute; (b) as to Officers or Employees specified in Section Two, when so stated in a written notice served by the Obligee or the Insured upon the Surety; or at twelve o'clock night upon the effective date specified in a written notice served by the Surety upon the Obligee and the Insured by registered mail. Such date shall not be less than thirty days after the date borne by the sender's registry receipt.

"Section 6. If the bond is canceled as an entirety, the Surety shall, on request, refund to the Obligee or the Insured the unearned premium computed pro rata.

"Section 7. Any oath of office attached to this bond signed by an official to be covered under this bond is a part of this bond in the same manner as if it were contained herein.

"RIDERS

"Section 8. The liability of the Surety hereunder is subject to the following terms and conditions or to the terms and conditions of the following Riders attached hereto:"

The positions as to additional amounts endorsed on the back of the bond are the county treasurer, sheriff, deputy sheriff, deputy treasurer, and county judge.

Attached to the bond are four pages whereon the following in typewriting appears: "I accept the foregoing bond and submit the same to the Board of Supervisors of Adams County, Nebraska, as my official bond for the office of ——————— of Adams County, Nebraska, for my term beginning January 6, 1955." This is repeated 20 times. Nineteen of the statements are signed. Fourteen statements have the name of the office inserted in writing. In five statements the name of the

office remains in blank. These statements do not show when they were signed, nor does it appear when they were attached to the bond. Some light on that problem is shown by the fact that the first five parties whose names appear on these statements verified their oath of office on January 6, 1955; the next eleven verified their oath of office on December 24, 1954; the next two verified their oath of office on December 28, 1954; and the last one verified his oath of office on January 6, 1955.

On December 24, 1954, the county board of supervisors adopted a motion reciting that the county officers having presented their blanket bond, and it having been found sufficient, it "is hereby approved * * * and ordered filed in the office of the County Clerk and County Judge * * *."

Also attached to the bond are 21 separate oaths of office. Of these oaths of office 11 are shown to have been verified on December 24, 1954. The oath of the county clerk and the deputy county clerk are shown to have been verified on December 28, 1954. Six of the oaths are shown as verified on January 6, 1955. The oath of the deputy county assessor is shown to have been verified on January 10, 1955, and that of the deputy county attorney on February 8, 1955. The last two officials do not appear to have signed the "accept" and "submit" form.

In the order in which these oaths are attached to the bond, the first two were verified January 6, 1955; the next four were verified December 24, 1954; the next one was verified January 6, 1955; the next three were verified December 24, 1954; the next one was verified February 8, 1955; the next one was verified December 24, 1954; the next one was verified January 10, 1955; the next three were verified January 6, 1955; the next three were verified December 24, 1954; and the last two were verified December 28, 1954.

We mention these things because they illustrate the conditions that are spawned where officials fail to follow

the clear provisions of the applicable statutes to which we refer later herein.

The petition herein was filed January 4, 1955. The cause was decided October 19, 1955. The motion for a new trial was overruled March 8, 1956. This appeal followed.

Plaintiff's assignments of error here are:

"1. The Court erred in entering judgment in favor of defendants and against the plaintiff.

"2. The Court erred in finding that a blanket bond would comply with the statutes of Nebraska.

"3. The Court erred in failing to find that the statutes contemplate and specify that elected county officials shall execute and furnish individual qualification bonds with either corporate or personal surety.

"4. The Court erred in failing to find that a blanket bond fails to comply with statutory requirements that an official bond must be executed and delivered by the officer as a joint and several contract.

"5. The Court erred in failing to find that a blanket bond fails to comply with statutory requirements that official bonds must be permanently filed and approval thereof endorsed on each individual bond.

"6. The Court erred in failing to find that a blanket bond fails to comply with statutory requirements as to full indemnity coverage applicable to each official position.

"7. The Court erred in failing to enjoin the purchase of a blanket bond since there is no statute authorizing such purchase.

"8. The Court erred in concluding that plaintiff could not raise an issue as to whether defendants forced county officers to accept a blanket bond.

"9. The Court erred in concluding that acquiescence of officers in a blanket bond constituted the furnishing of a bond as required by law."

As we view this record the question here is not: Can the county buy this bond as additional security to the

bond required by statute for county officers? Likewise the question is not: Would the company and an official be liable on this bond in the event of a default of a particular officer?

The question is: Does this bond, together with the acceptances, submissions, and oaths of office referred to, measure up to the requirements of the statutes?

The original act here involved regarding official bonds and oaths of office was enacted in 1881. Laws 1881, c. 13, p. 94. Basically the provisions have remained substantially unchanged through the years, although there have been amendments and new provisions subsequently enacted.

In State ex rel. Jones v. Clausen, 78 Wash. 103, 138 P. 653, the court held: "It has been, and it well should be, the policy of the courts in construing statutes, to ascertain the intent of the legislative branch of the government. No surer search light can be found than the settled practice of the legislative body, for a habit, if tolerated and acquiesced in for a period of years by the people, and if it in no way offends against any provision of the constitution, becomes a quasi custom; and of custom, it is said there can be no higher law."

This decision was followed in O'Connor v. Murtagh, 225 Iowa 782, 281 N. W. 455, in which the court used this language: "In construing statutes, and ascertaining the intent of the legislative branch of the government, the courts will take into consideration the settled practices of a legislative body."

The statement quoted in State ex rel. Berge v. Lansing, 46 Neb. 514, 64 N. W. 1104, 35 L. R. A. 124, is still quite applicable: "* * * it is an excellent idea for courts to give to statutory language its plain and ordinary meaning."

The settled practice of the Legislature for the last 75 years has been to require individual bonds from individual county officials. This is abundantly clear in an analysis of the various statutory provisions.

All sections referred to herein are found in R. R. S. 1943. All emphasis is supplied by us.

Section 11-101 requires that the oath shall be endorsed "upon their *respective* bonds. * * * If *any* such officer is not required to give *bond*, the oath shall be filed in the office of the Secretary of State, or of the clerk of the county, city, village, or other municipal subdivision of which he shall be an officer."

Section 11-103 provides: *"All official bonds* of county * * * officers must be in form joint and several, and made payable to the county in which the *officer* giving the same shall be elected or appointed, * * *."

Section 11-105 provides: "Official *bonds,* with the oath endorsed thereon, * * *."

Section 11-107 provides: "The official *bonds* of all county * * * officers shall be approved by the county board, except the official *bonds* of the county commissioners or supervisors, which shall be approved by the county judge. * * *." Clearly, more than one bond is contemplated here.

Section 11-108 provides: *"Each official bond* of a state officer shall be executed by the officer * * *."

The companion section for county officials is section 11-109. It provides: "All official bonds of county * * * officers shall be executed by the *principal* named in such bonds and by at least two sufficient sureties * * * or *any* official *bond* of a county * * * officer may be executed by the *officer* as principal and by a * * * bonding company as surety * * *. Only such companies as are legally authorized to transact business in this state shall be eligible to suretyship on the *bond* of *a* county * * * *officer."*

Section 11-110 provides: "The officers with whom any official *bonds* are required by law to be filed shall carefully record and preserve the same in their respective offices, * * *."

Section 11-111 provides: "The approval of *each* official bond shall be endorsed upon such *bond* * * *."

Section 11-115 provides: "If any person elected or appointed * * * shall neglect to have *his official bond* executed and approved as required by law, * * * his office shall thereupon ipso facto become vacant, * * *."

Section 11-117 provides: "When the incumbent of an office is re-elected or reappointed *he* shall qualify by taking the oath and giving the *bond* as above directed, but * * * *his bond* shall not be approved * * *."

Section 11-118 provides: "No person shall be surety for the same *officer* * * *."

Section 11-119 provides: "The following named officers shall execute *a bond* * * *." Beginning with subsections (29) to (38), inclusive, is the provision for the amount of the bond required of "each" county official named.

Section 11-121 provides: "Any *officer* or *person* who is entrusted with funds * * * shall be responsible for the same upon *his bond*. When * * * there is no provision of law requiring *him* to give a *bond* * * * he shall give *bond* * * *. No warrant shall be issued or money paid over to such *officer* or person until said *bond* is filed * * *."

Section 11-122 authorizes the county board under certain circumstances to require "an additional *bond*" from a county treasurer; it refers to the penalty "in the previous *bond*," and sets out the conditions under which a vacancy in the office occurs for failure to "give such additional * * * *bond*."

Section 11-125 provides that whenever "any" of the county officers named therein furnishes "*a bond* executed by a surety company" and the bond is approved, "then in each and every case the county may pay the premium for such *bond*" and where the stated term of the *bond* is "reduced * * * by reason of death, resignation or removal from office of *such official* for a cause not imposing liability on his bond, the obligor shall refund * * * the unearned portion of the premium * * * of *said bond*. * * *."

Section 11-126 provides: "Whenever any *deputy* or employee \* \* \* shall be required \* \* \* to supply *bond,* and such deputy or employee shall furnish *a bond* by a surety company, which *bond* shall be approved by the county board, the county may pay the premium for such bond."

Section 11-127 provides: "Upon the execution and approval of the *bonds* \* \* \*."

Section 11-130 provides: "It shall be lawful for any person of whom *a bond* \* \* \* is required, to agree with *his* surety or sureties" as to the deposit for safekeeping and withdrawal of funds and that such agreement shall not release from or change the liability of the principal or sureties "of the bond."

Section 23-207 provides that where counties adopt township organization the appointed supervisors "shall duly qualify and file *their* oath of office and *bond.*"

Section 23-1204.04 provides that "The deputy county attorney \* \* \* shall file *a bond* \* \* \*," and by section 23-1204.05 "each of such deputies shall be required to give a *bond.*"

Section 23-1304 provides that the county clerk shall keep a record of all official bonds filed in his office, "giving the name of the office, amount and date of *bond,* names of sureties, and date of filing."

Section 23-1505 provides for a deputy or deputies for the register of deeds and states their powers "upon giving *bond.*"

Section 23-1616 provides that where clerks are employed as cashiers, "said *clerks* shall give *bond.*"

Section 24-507 provides for the appointment of a substitute county judge "who shall give *a bond*" and for "*one* bond for the entire period of such appointment" and when "*a bond* is furnished with corporate surety the county shall pay the premium "for such *bond.*"

Section 32-1038 refers to "an official *bond*" of an official in military or naval service.

Section 39-503 provides that the county highway commissioner shall "execute * * * *a bond.*"

Section 77-401 provides that the *county assessor* "shall execute *a bond.*"

Section 77-1704 deals with the collection of taxes by the county treasurer and refers to liability *"on his bond."*

Section 77-1711 refers to the county treasurer and *"he* and *his bondsmen* shall be liable."

Section 77-1737 refers to the liability of certain officials "on *their* official bonds."

Section 77-1760 refers to the liability of the county treasurer "upon *his bond."*

Section 77-1817 refers to the liability of the county treasurer "and *his bondsmen."*

Section 77-1847 refers to the liability of the county treasurer "upon *his official bond."*

Section 77-2211 refers to the treasurer and "civil action on *his official bond."*

Section 80-101 refers to the county service committee and they "shall *each give bond."*

Section 84-801 refers to certain county officials appointing deputies from whom they "shall require *a bond."*

Section 86-406 refers to a telephone chief who "shall give *bond."*

We think it quite patent from the above statutory provisions that the uniform practice of the Legislature over the years has been to require each county official or employee to furnish a bond covering the requirements of his position. He is to execute it as principal. He is to select the surety and have the surety execute the bond. He is to submit it to the approving authority and secure approval. He is to file the bond in the required office or with the required person. See Holt County v. Scott, 53 Neb. 176, 73 N. W. 681, wherein we held: "The law contemplates that the officer will have the bond approved and afterward filed and recorded."

The procedure involved here is the reverse of that process. Here the county prepares the bond. Here the

county selects the surety and has the surety execute the bond. Here the county submits the bond to the officers for their acceptance. Here the county board directs the filing of the bond. The official bond plan here followed takes from the elected official his right to perfect his title to the individual office.

The plan of furnishing a blanket bond such as we have here is not in accord with the legislative intent and requirements as to official bonds of county officials and employees.

There are other considerations and requirements of the statutes that compel the same conclusion.

Section 11-101 requires an oath of office of county officers "which shall be endorsed upon their respective bonds." Here the oaths of office are stapled to the blanket bond. We need not determine whether that constitutes an endorsement on the bond. If they were stapled to the blanket bond in the order in which they were filed with the county clerk, then it is patent that the first oath was not submitted earlier than January 6, 1955, for that is the date of the verification of the first oath so attached. The county board, however, approved the bond December 24, 1954. We held in State ex rel. Baird v. Slattery, 108 Neb. 415, 187 N. W. 899, that the evident purpose of the Legislature was to preserve the oath and bond together and that to approve a bond without the oath endorsed thereon "would be a patent disregard of the law."

However, if we are to assume that oaths of office were submitted with the bond and not attached thereto when the county board approved the bond on December 24, 1954, and that that is sufficient, then it is patent that only 11 of them were so submitted for the others were verified subsequent to that date. It necessarily follows that any attempt of the county board to approve the bond as to officers whose oaths were to be endorsed on the bond subsequently would be a patent disregard of the law. If a blanket bond is to be used, such as we

have here, then to meet the requirements of the act, each time a county officer or employee is required to give bond subsequent to the date the bond is approved, the law would require that the oath of office be endorsed on the bond and the bond then approved as to that officer.

Section 11-111 requires that "The approval of each official bond shall be endorsed upon such bond * * * and no bond shall be filed and recorded until so approved." We find no approval of the blanket bond involved here endorsed upon the bond.

We are concerned with the procedures which the Legislature contemplated should be followed. It may be said that this provision can be met, if need be, by having the bond withdrawn and approved and the endorsement placed thereon as to officers and employees subsequently undertaking to make it their bond.

There are statutory difficulties in the way of that procedure.

The statute also requires that the bond be filed by the officer. As we held in Holt County v. Scott, *supra*: "The law contemplates that the officer will have the bond approved and afterward filed * * *."

In the instant case the bond was approved and filed before eight of the officers who had stated "I accept * * * and submit" the bond had verified their oath of office.

But it may be said that, if necessary, the blanket bond already on file may have the oath of office attached, tendered for approval, and filed. But as to that, again there are statutory difficulties.

Section 11-105 requires that official bonds with the oath endorsed thereon shall be filed in the proper office.

Section 11-110 provides: "The officers with whom any official bonds are * * * to be filed shall carefully record and preserve the same in their respective offices, * * *."

Construing what is now section 11-115 in Paxton v. State, 59 Neb. 460, 81 N. W. 383, 80 Am. S. R. 689, we

held: "Section 15, chapter 10, Compiled Statutes, 1899, contemplates that an official bond, after its approval by the proper officer, shall be returned to the person presenting it, and be by him filed in the proper office for record."

How can a bond that is required by law to be filed in the county clerk's office, for instance, be carefully preserved in that office and be at the same time "returned to the person presenting it" for approval and be by him retained until by him filed for record? No solution is suggested to that problem. But that problem has its complications and additional statutory difficulties.

Section 11-107 requires that certain official bonds shall be filed in the office of the county clerk and that those of the county clerk and the members of the county board shall be filed in the office of the county judge. The question then would come: How can a blanket bond be filed in the office of the county clerk and be carefully preserved there and at the same time be filed in the office of the county judge and be carefully preserved there? The obvious answer is that the Legislature never contemplated the use of such a blanket bond.

We return to the matter of the statutory requirement of bond approval.

Section 11-107 requires that the official bonds of all officers shall be approved by the county board except those of the county board, which shall be approved by the county judge.

The blanket bond here involved was approved by the county board and ordered filed in the office of the county clerk and the county judge. It was filed in the office of the county clerk where it must be carefully preserved. It does not appear that it ever was filed with the county judge, or that the county judge ever approved it as the bond of the county board. The same question arises here as to the right of the officials to remove it from the files of the county clerk's office and tender it to the

county judge for his approval and filing and careful preservation.

Section 11-122 authorizes the county board under certain circumstances to require the county treasurer to give aditional surety or sureties. We find no authority which permits the county treasurer to withdraw this blanket bond from the files of the county clerk's office in order to furnish the additional surety.

By various provisions of the statutes the term of office of officials begins and ends at variable times. Some have indefinite and optional tenure and some have different requirements as to the amount of the bond.

We refer to some of the provisions: By section 11-117 when an incumbent is re-elected or reappointed he is required to give bond.

By section 23-1204.04 the deputy county attorney is required to give bond and is removable at the pleasure of the county attorney.

By section 23-1204.05 certain deputy county attorneys are required to give bond, the amount to be fixed and approved by the judges of the district court.

By section 23-1505 a deputy register of deeds may be appointed when authorized by the county board and is required to give bond.

By section 24-507 a substitute county judge is required to give bond. The appointment is revocable by the county board at its pleasure.

By section 39-501 the county highway commissioner is an appointive officer and by section 39-503 he is required to give bond.

By section 80-101 the terms of the members of the county service committee are staggered. They are required to give bond.

By section 84-801 certain officials are authorized to appoint deputies whose appointment is revocable by the principal. They are required to give bond.

By the provisions of sections 23-268 and 32-312 county supervisors are elected for 4-year terms, but every 2

years part of them are elected. They are required to give bond. Some interesting questions can arise as to just how the supervisors elected in 1958 in Adams County could comply with the statutory requirements as to bonds, using this blanket bond as a vehicle to meet their obligations in that regard. The questions are suggested herein and will not be repeated.

The above provisions may be readily complied with by the use of individual bonds. Compliance is rendered quite difficult, if not impossible, by the use of a blanket bond.

Section 11-109 requires an official bond to be executed by the principal "named in such bonds" and by either freeholders or a bonding company as surety. This requirement contemplates clearly two things: The principal shall execute the bond. The bond here in nowise in form contemplates an execution by the principal. It is in form a contract between the county and the company as principals. We need not determine whether or not the execution of the riders attached is sufficient to comply with the law in the event of a default of the officer. The language of the statute is "principal" not principals. It is pointed out here as indicative of a legislative intent that there shall be a separate bond for each officer. This construction is strengthened by a reference to section 11-108 which requires "Each official bond of a state officer shall be executed by the officer as principal * * *." We find no basis for a contention that the Legislature contemplated individual bonds for state officers and a blanket bond for county officers.

Section 11-109 contains another provision that points directly to a legislative intent that individual bonds are contemplated. That is the provision for the use of "freeholders" as surety. This provision would be easily operable in the case of an individual bond where the official selects his surety. We anticipate it would be

quite difficult for a county to secure qualified free-holders as sureties on a blanket bond.

Section 11-125 authorizes the county to pay for official bonds under certain circumstances. Included among the officers are the county clerk and other individual officers. However, it includes also "county commissioner or supervisor." The singular is used, indicating an individual bond whereas it is obvious that if a blanket bond were contemplated as to the commissioners or supervisors the plural word would have been used. This conclusion is strengthened by the reference in section 11-125 to section 32-1038. The latter section provides that when an official is in military or naval service "such person shall not be * * * required to keep and maintain an official bond in force * * *." Obviously if a blanket bond were within the Legislature's intent, then this provision would be surplusage.

We have pointed out that by section 11-107 the bonds of the county commissioners shall be approved by the county judge and that the bonds of the county clerk and the county board shall be filed and recorded in the office of the county judge. The blanket bond here involved is submitted as the bond of the clerk and supervisors. As to those supervisors the bond here is not shown to have been approved by the county judge. As to the clerk and supervisors it is not shown to have been filed in the office of the county judge. The approval and filing is an essential part of the furnishing of the bond. Without those steps being taken the county would be without authority to pay for the bond of those officials. Plaintiff prays that such a payment be enjoined. However, we do not rest our reversal of the trial court on that restricted basis alone. It is pointed out here that the statute is operative without difficulty if individual bonds are used, but here again difficulties are presented to the use of a blanket bond.

The defendants suggest that if the bond here involved is insufficient as to any officer, that a "rider" could be

attached to the bond to cover the deficiency. It may be that some of the matters which we have discussed herein could be so handled insofar as fixing liability on the bond is concerned. However, again we find nothing in the statutes that indicates a legislative intent that an official bond is to be draped and encumbered by a series of acceptances, riders, endorsements, oaths of office, approvals, and filings.

Section 11-110 requires an officer with whom an official bond is filed to give certified copies thereof and to receive pay therefor. Such a provision presents no difficulty in application in the case of an individual bond. It presents difficulties in the case of a blanket bond. In the instant case the blanket bond has 19 individual "accept" and "submit" statements attached to it. It has 21 oaths of office attached to it. If a purchaser desired a copy of the official bond of the clerk of the district court, would the county clerk be required to certify this bond with all the endorsements and oaths that are presently attached to it, and would the purchaser be required to pay for all of that material that has no reference to the clerk of the district court?

We shall not assume a legislative intent to create problems of this character. In one form or another they will arise throughout the act were we to hold a legislative intent to authorize the use of a blanket official bond.

Plaintiff in his petition prays for relief only as to the bonds of elective county officials. Nevertheless we have combed the statutes as they apply to elective and appointive county officials and employees. From beginning to end the entire statutory scheme points to a legislative intent and purpose that each official shall furnish his individual bond, subject to the terms and conditions applicable to his individual office. It is that kind of a bond that the Legislature contemplated would be furnished, approved, and filed.

During the many years these statutes have been in

force, multiplied thousands of county officers have complied therewith without difficulty. These statutes have required a minimum of judicial construction. We find nothing in the act that points to a legislative intent that blanket official bonds were contemplated or authorized. The many provisions above pointed out negative such a conclusion.

Having clearly and explicitly enacted a complete system of individual official bonds, we see no necessity for the Legislature to negative by direct language an intent to authorize blanket bonds. The negative intent to authorize a blanket bond is inherent in the affirmative authorization of individual bonds.

Accordingly we hold that the statutes requiring official bonds of elected county officers are intended to require individual official bonds. A blanket bond purporting to cover all elected county officers does not meet the standards required by the statutes.

The judgment of the district court is accordingly reversed and the cause remanded with directions to enjoin the county from purchasing and paying for the bond here involved insofar as it purports to be a bond in lieu of the required individual bonds of the elected county officials.

REVERSED AND REMANDED WITH DIRECTIONS.