**STATE, ex rel. BOTT, Relator, v. PETRO et, Respondents.**

Common Pleas Court, Cuyahoga County.

No. 714260.   Decided June 15, 1959.

Hemple & Gordon, Lakewood, for relator.
George E. Fedor, Cleveland, for respondents.

## OPINION

By DANACEAU, J.

The relator, Ralph W. E. Bott, is a widower, whose late wife, Florence S. Bott, had been a member of the Police Department of the City of Lakewood and had retired in 1951 after twenty-five years of service. During her retirement and until her death in 1957 she was the beneficiary of allowances from the Police Relief Fund of which the respondents

are the trustees. In October of 1947 said Florence S. Bott elected to be governed by the rules and regulations of the Police Relief Fund of the City of Lakewood.

The relator claims that he is entitled to receive a pension from the said fund as the "widow" of the said Florence S. Bott, and, his request being denied, demands that a writ of mandamus issue commanding the respondents to authorize the payment to him of such widow's pension.

The pertinent part of Section No. 2 under the heading of "Beneficiaries" of the Rules and By-laws governing the Board of Trustees of the Police Relief Fund of the City of Lakewood as amended August 1, 1944, reads

"When any member of said Police Department or retired member on pension thereof, dies, from any cause whatever, and leaves a widow, child or children under eighteen years of age, the Board of Trustees shall authorize the payment to such widow, while unmarried, and the child or children under eighteen years of age, monthly, from the Relief fund, the sum provided in Section 3 of this Act in accordance with the provisions set forth in Section 1 of this act, or if any member shall have a dependent father or mother, upon such satisfactory proof that such father or mother was dependent upon such deceased member of the Police Departmet, the Board of Trustees shall authorize the payment to such father or mother monthly, from the Relief Fund, the sum provided in Section 3 of this Act in accordance with the provisions set forth in Section 1 of this Act, provided, no pensions shall be paid to the father or mother of the deceased member who leaves a widow and if the widow of any deceased member shall re-marry, her pension shall cease, and when the child or children of any deceased member shall reach the age of eighteen years or if the widow shall re-marry before the child or children reach the age of eighteen years, their pension shall cease. In the event of the death of the widow before the children reach the age of eighteen the sum provided in Section 3 of this Act shall be paid to the legally appointed guardian of said children. And further provided if any member of the Department shall be married after being retired and placed on the pension list, neither his widow or his children by said marriage shall participate or be entitled to any benefits accruing from said pension in case of death of said retired member."

The pertinent part of §4631-1 GC, in effect in October, 1947, read:

"Sec. 4631-1 GC. ELECTION TO RECEIVE BENEFITS AND PENSIONS. Persons who, on the effective date of this act, have been contributing two per cent of their annual salary to a police relief and pension fund may elect to receive benefits and pensions from said fund in accordance with the rules and regulations governing the granting of pensions and benefits therefrom, in force on the first day of April, 1947. Such election must be in writing and filed with the trustees of said fund within sixty days after the effective date of this act. Provided, however, such person shall be required to contribute to the fund in the manner and in the amount provided for in §4625 GC."

The statute and the rules clearly authorize allowances to a widow, child or children under eighteen years of age while the widow remains unmarried, such allowance to terminate if the widow of any deceased member shall remarry. There is no such provision with respect to a surviving husband.

Is the relator a "widow"? Webster's Dictionary (New Collegiate Edition 1958) defines "widow" as "(a) a woman who has lost her husband by death; the female survivor of a marital union. (b) a woman who has not remarried after the death of her husband." Widower is defined as, "a man who has lost his wife by death, and has not married again."

The word "widow," popularly and legally, means a woman who has lost her husband by death and has not remarried; the surviving lawful wife of a decedent. Montclair Trust Co. v. Reynolds, 141 N. J. Eq. 276.

The common meaning of the word "widower" is a man whose wife his died and has not remarried. Canal National Bank of Portland v. Bailey, 142 Me. 314, 51A 2d 482, 483.

Reference is made to §1.10 R. C., which reads in part

"As used in the Revised Code, unless the context otherwise requires: (B) Words in the masculine gender include the feminine and neuter genders."

The provisions involved herein refer only to a widow and the context will not permit the word "widow" to include "widower." It is also to be noted that §1.10 R. C., does not provide that the feminine gender includes the masculine.

In Young v. O'Keefe, 69 N. W. 2d 534, the Supreme Court of Iowa had before it the question of whether or not a widower of a deceased feminine member of the Sioux City Police Force had the same survivor's right to benefits as allowed to the widow of a deceased male member of said police force. The Court held on page 536,

"Had the legislature so intended, it would have been easy and natural to have provided, simply and clearly, that the word "widow" shall include "widower." Certainly that is not the meaning expressed here."

and on page 538,

"It is of course possible the members of the 45th General Assembly, had it been called to their attention, might have made the same provision for surviving widowers of deceased female members as was made for widows of deceased male members.

"But it is at least equally plausible that the legislature, as defendants suggest, deliberately omitted doing so, considering financial dependency (as typified by the wife and children rather than by the husband and father) to be the 'primary and essential' qualification to entitle a survivor to benefits."

The Supreme Court of Iowa held that under a pension statute providing that the term "widow" should mean only such surviving spouse of marriage contracted prior to the retirement of the deceased member

or of marriage of retired member contracted prior to effective date of act, the phrase "such surviving spouse" meant "widow" and did not have effect of enlarging term "widow" to include "widowers."

Chretien v. Amoskeag Mfg. Co., 87 N. H. 378, 180 A. 254, was an action under the Workmen's Compensation Act by an administrator to recover compensation for the husband of a woman who died as a result of compensable injuries, the husband alleging that he was wholly dependent upon her earnings. The pertinent part of the statute provided (Page 254)

"If the workman leaves any widow, children or parents, at the time of his death, then wholly dependent on his earnings, a sum to compensate them for loss, * * *"

In the opinion of the court (Page 255) it is said

"But a statute requiring that words denoting the masculine gender shall include females 'will not authorize us to read the word widow as including widower.'"

"The Legislature, having twice considered the question of recovery of dependents of a deceased employee, presumably gave careful thought to the definition of the class of dependents who were to benefit by the act. The inclusion of widows and the failure to name widowers therefore becomes especially significant. If the Legislature had intended to include widowers, it seems probable that they would have inserted the word, or at least would have adopted the general designation of 'spouse' for 'widow' in the same manner as they used 'children' instead of 'son or daughter,' and 'parents' instead of 'father and mother.'"

In Rourke v. Russell, 91 Conn. 76, 98 A. 718, the court had before it the question of whether or not the Probate Court had authority to make an allowance to a surviving husband out of the estate of his deceased wife for his support during the settlement of the estate under a statute authorizing such allowances "for the support of the widow or family of the deceased." The court held (Page 719).

"This phraseology on its face excludes a surviving husband. 'Expressio unius, exclusio alterius.'" * * *

"The appellee invokes the rule of construction expressed in section 1 of the General Statutes that words imputing the masculine gender may be applied to females; but that will not authorize us to read the word 'widow' as including 'widower.'"

The Supreme Court of Connecticut disallowed the claim of the surviving husband.

In John Stone v. Board, 119 N. J. L. 211, 195 A. 617, affirmed by the Court of Errors and Appeals of New Jersey in 120 N. J. L. 184, the court had before it the claim of a surviving husband for a pension by reason of the service of his wife as a jail matron and a member of the Sheriff's Employees' Benefit Fund under a statute providing that the "widow" of any sheriff's employee shall receive a pension so long as she remains unmarried. It was urged that the word "widow" was intended to include "widower." The court held (195 A. 617).

"The court is asked to say that the word 'widow' was intended by the Legislature to include 'widower.' We think the language and the con-

text plainly bar any such construction. The word itself, in common and universal usage, connotes a female. The statute speaks of an employee who loses his life in the performance of his duty, and the pension goes to the widow so long as she shall remain unmarried. It would be a strange application of the statute to say that if a surviving husband, assumed to be entitled, should remarry, he should lose the pension because of having assumed the burden of supporting a second wife;"

A widow of a police officer, left with minor children is confronted with problems of support quite different from those which ordinarily touch a widower. The community at large is justifiably apprehensive and such apprehension has found its way into the statutes and the rules adopted. There is no corresponding apprehension for a surviving husband.

Should the widow remarry the pension would cease, presumably on the theory that financial support was no longer needed. Should a widower remarry, and the construction urged by the relator applied, it would be strange indeed to stop an allowance because the husband now has the burden of supporting a second wife. The differences in the respective situations are apparent and clearly warrant the distinctions made by the statute and rule.

Relator complains that his late wife contributed the same rate as the men did. That would be true also of the many unmarried officers who contributed equally with the married men, yet cannot possibly receive the benefits that relator seeks.

The Police Relief Fund was not created exclusively by the contributions of the officers. A substantial portion comes from taxation. The fund is not exclusively the concern of the officers. It is also of great concern to the public. As stated by Judge Stewart in State, ex rel. Hall, v. Board, 149 Oh St 367, 376, "The police relief fund is a public fund." The first syllabus in that case reads

"A municipal police relief fund established under the law is a public trust and can be disbursed only by clear authority of the law. The trustees thereof are authorized to pay from such fund only in accordance with the rules adopted by such trustees pursuant to law, and any payments not in accord with such rules are illegal and unlawful and cannot be considered as an interpretation of the rules."

In the instant case the total contributions of Florence S. Bott from November 1, 1926 to November 1, 1951 was $1201.51. From the date of her retirement in 1951 to the date of her death on August 28, 1957, she received from the fund the sum of $14,866.68. In addition there were pension payments accrued which had not been paid to her, but which have been paid to her estate after her death in the amount of $3715.11. It also appears that the fund is still indebted and there is due the estate the sum of $557.73. The total amount paid or payable to Florence S. Bott and her estate is $19,139.52. The public contribution and concern in and for the Police Relief Fund is here well illustrated.

The needs of the widow and orphan are of concern to the general public as well as to the persons involved and there is a good and sound basis for the classifications found in the statute and the rules. The classi-

fication was inserted into the law with design and being reasonable does not exceed constitutional limitations.

It is the opinion of this court that the word "widow" means a woman who has lost her husband by death and who has not remarried and that by intent and design the statute and the rules and regulations do not include a widower.

Mandamus is an extraordinary remedy available to command the performance of an act which the law especially enjoins as a duty resulting from an office, trust, or station. The relator must show a clear legal right to the relief sought as a condition precedent to the issuance of a writ.

The court has before it the stipulation of agreed facts and the briefs of counsel. On consideration thereof the court finds that the relator has not established a clear right to the relief demanded and that the respondents have quite properly refused his demand.

The writ of mandamus is denied. O. S. J.