IN RE ESTATE OF ADDIE THOMPSON, DECEASED. CLAUD E. TODD, EXECUTOR OF THE WILL OF ADDIE THOMPSON, DECEASED, ET AL., APPELLEES, V. COUNTY OF BOX BUTTE, STATE OF NEBRASKA, A POLITICAL SUBDIVISION, ET AL., APPELLANTS.

99 N. W. 2d 245

Filed November 20, 1959. No. 34646.

*Gantz, Hein & Moran* and *Lawrence E. Mitchell,* for appellants.

*Reddish & Fiebig* and *H. Alan Curtiss,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This appeal presents the question of whether an inheritance tax is payable under the rates provided in section 77-2004, R. R. S. 1943, or in section 77-2006, R. R. S. 1943.

The facts are not in dispute. Ella Thompson was born the daughter of Addie and Eugene E. Thompson.

Ella was married to Claud E. Todd in 1927. She died in 1932, being at all times from 1927 to the date of her death, the wife of Claud E. Todd. Claud E. Todd married Eldora in 1936 and they have remained husband and wife since that date.

By will dated May 31, 1957, Addie Thompson devised and bequeathed a substantial part of the residue of her estate to Claud E. Todd and Eldora Todd.

Addie Thompson died November 8, 1957.

The county court held that the inheritance tax was payable under the provisions of section 77-2006, R. R. S. 1943. The district court on appeal held that the tax was payable under the provisions of section 77-2004, R. R. S. 1943. The counties involved are Box Butte and Sheridan. They appeal here.

We reverse the judgment of the trial court and remand the cause with directions to hold the tax payable under the provisions of section 77-2006, R. R. S. 1943, and render judgment accordingly.

Section 77-2004, R. R. S. 1943, provides in part: "In the case of a father, mother, husband, wife, child, brother, sister, *wife or widow of a son, husband of a daughter,* child or children legally adopted as such in conformity with the laws of the state where adopted, any lineal descendant born in lawful wedlock, or any lineal descendant legally adopted as such in conformity with the laws of the state where adopted; or to any person to whom the deceased for not less than ten years prior to death stood in acknowledged relation of a parent; * * *." (Emphasis supplied.)

Section 77-2005, R. R. S. 1943, provides in part: "In the case of an uncle, aunt, niece, or nephew related to the deceased by blood or legal adoption, or other lineal descendant of the same, * * *."

Section 77-2006, R. R. S. 1943, provides in part: "In all other cases * * *."

The tax is a progressive one in amount depending upon which section is applicable. It is obvious that

those situations that do not fall within the provisions of sections 77-2004 or 77-2005, R. R. S. 1943, fall within the provisions of section 77-2006, R. R. S. 1943.

At the outset we are presented with the contention that we are bound by the construction placed upon a like statute in New York by In re Ray's Estate, 13 Misc. 480, 35 N. Y. S. 481, which held that: "Laws 1892, c. 399, § 2, exempting from the transfer tax a legacy to the 'husband of a daughter' of testator, includes the husband of a deceased daughter, though he has remarried."

This contention proceeds on the statement contained in In re Estate of Dowell, 149 Neb. 599, 31 N. W. 2d 745, that our "statute was taken" from New York; and on the fact that the decision in In re Ray's Estate antedated the adoption of our inheritance tax statutes. There is a statement, however, in In re Estate of Sanford, 90 Neb. 410, 133 N. W. 870, 45 L. R. A. N. S. 228, that our act is almost a literal copy of the Illinois act. Judge Fawcett in dissenting states that it was taken from New York's act of 1887.

It appears that New York first passed an inheritance tax law in 1885. Laws of New York 1885, c. 483, p. 820. The 1887 act was an amendment of the 1885 act. Laws of New York 1887, c. 713, p. 921. The act in section 1 provided a tax on "all property" passing by will or intestacy to any persons "other than to or for the use of his or her father, mother, * * * the wife or widow of a son, or the husband of a daughter, * * *."

It is interesting to note that in its original 1885 act (Laws of New York 1885, c. 483, § 2, p. 820) in setting out procedures where there was an estate for life or years involved, the statute referred only to "widow of a son." This provision does not appear to have been retained in the 1887 act. Laws of New York 1887, c. 713, p. 921. It does appear, however, in the Illinois act (Laws of Illinois 1895, § 2, p. 302), and in our 1901 act. Laws 1901, c. 54, § 2, p. 415. Illinois adopted an

inheritance tax act in 1895. Laws of Illinois 1895, p. 301. In it appears language found in the 1885 New York act and not in the 1887 New York act as above noted.

It is interesting also to note that Illinois added a provision comparable to our section 77-2005, R. R. S. 1943. Laws of Illinois 1895, § 1, p. 301. As it appears in our original act, Laws 1901, c. 54, p. 414, the language of our original act of 1901 appears to be substantially a copy of the Illinois act of 1895.

In People v. Beckers, 413 Ill. 102, 108 N. E. 2d 5, the Supreme Court of Illinois stated that its act, in part at least, was taken from the New York act of 1885. A comparison of the acts sustains that conclusion.

So an accurate statement, based on this research, would appear to be that we adopted substantially the Illinois act after Illinois had adopted a modification of New York's 1885 act.

But the quest for a source of the statute need not stop there. There were nine states that adopted inheritance tax laws before the New York act. Pennsylvania in 1826 was the first to do so. Pinkerton and Millsaps, Inheritance and Estate Taxes, c. II, § 14, p. 10.

Purdon's Digest (Brightly 9th Ed.), 1700-1861, page 148, sets out the Pennsylvania act. Repeatedly in the New York act language is used that is the same or quite comparable to the Pennsylvania act. It is apparent that whoever drafted the New York act studied the Pennsylvania act or one of comparable language. It is quite certain that before New York adopted its act the Supreme Court of Pennsylvania had construed its act as set out later herein. See Commonwealth v. Powell, 51 Pa. 438.

The general rule to which the appellees resort is one well established in this state. It is stated in James Forrester & Co. v. Kearney Nat. Bank, 49 Neb. 655, 68 N. W. 1059, as follows: "Where the legislature adopts the statute of another state, it likewise adopts the judi-

cial construction which it had already received by the highest court in such state."

In some of our decisions we use the expression "courts." We did so in In re Estate of Dowell, *supra*. We used "highest courts" in International Milling Co. v. North Platte Flour Mills, 119 Neb. 325, 229 N. W. 22. In Magner v. Kinney, 141 Neb. 122, 2 N. W. 2d 689, we referred to the "settled construction" of the foreign jurisdiction. In State v. Boatman, 142 Neb. 589, 7 N. W. 2d 159, 144 A. L. R. 585, we said: "We quite agree that in construing a statute borrowed from a foreign state there is a presumption that the legislature adopted it with approval of all interpretations given it by the court of last resort of that state."

"* * * when a statute has been adopted from another state, ordinarily the construction given prior to its adoption by the courts of that state will be followed in the adopting state, in the absence of any indication of a contrary intention on the part of the Legislature. The rule is subject to the qualification, however, that a construction of such a statute by the state from which it was adopted is entitled to no greater consideration than previous decisions of this court, and will be rejected for reasons which would require the overruling thereof had it been first adopted in this state." Nebraska Mid-State Reclamation Dist. v. Hall County, 152 Neb. 410, 41 N. W. 2d 397.

The above is not intended to be an all-inclusive summary of our decisions.

The Supreme Court of the United States has recently stated the rule as follows: "The 'general rule that adoption of the wording of a statute from another legislative jurisdiction carries with it the previous judicial interpretations of the wording * * * rests on a presumption of legislative intention * * * which varies in strength with the similarity of the language, the established character of the decisions in the jurisdiction from which the language was adopted and the presence or lack of

.

other indicia of intention.'" Yates v. United States, 354 U. S. 298, 77 S. Ct. 1064, 1 L. Ed. 2d 1356.

In Smith v. Baker, 5 Okl. 326, 49 P. 61, the rule was stated as follows: "* * * where one state or sovereignty adopts a statute of another state or sovereignty, which has already received a known and definite construction in its courts, it is presumed to adopt the construction thus given. * * * The essential elements upon which the presumption is based is, that it has already received a known and definite construction. The construction must have been fixed and uniform and must have been so long established as to have been known, or so that it reasonably might have been known, to the legislature adopting it. * * * The meaning of a statute cannot be considered as settled by judicial construction, so as to carry that construction with it to the jurisdiction where it is adopted, when it has not been so settled by the highest judicial authority which can pass upon the question."

It should be stated that reported decisions of trial and intermediate appellate courts are to be considered for whatever persuasive merit they deserve.

In re Ray's Estate, *supra,* was decided in July 1895. It was published in the New York Supplement Reports in 1896. Our inheritance tax law was enacted in 1901 and approved April 1, 1901. Laws 1901, c. 54, pp. 414, 422.

Judicial credulity does not require us to presume that our Legislature less than 5 years after the publication of the decision of In re Ray's Estate, *supra,* knew or should have known of that isolated decision of a surrogate's court in one New York county and intended to adopt the construction there placed on the act. Likewise that one isolated decision cannot be held to have established a known and definite construction of the act. Obviously it was not even a solitary construction of the highest judicial authority of New York.

We accordingly put aside In re Ray's Estate, *supra,*

as not having any controlling presumptive weight.

We have held that the fundamental principle of statutory construction is to ascertain the intent of the Legislature, and to discover that intent from the language of the act itself. It is not the court's duty nor within its province to read a meaning into a statute that is not warranted by legislative language. Chicago & N. W. Ry. Co. v. City of Seward, 166 Neb. 123, 88 N. W. 2d 175.

We have also held that: "Where words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain their meaning, and the court cannot read a meaning into statutes that is not warranted by the legislative language. Neither is it within the province of a court to read plain, direct, and unambiguous language out of a statute." Heppe v. State, 162 Neb. 403, 76 N. W. 2d 255.

The language of our statute here involved is the meaning of the phrase "husband of a daughter." It must be contrasted with "wife or *widow* of a son."

It will be noted that section 77-2004, R. R. S. 1943, relates to those "immediate relatives" as stated in the catch-phrase heading, those who are related by blood, or consanguinity; also those where the relationship depends upon marriage; and those legally adopted or those to whom the deceased stood in the relationship of a parent.

Section 77-2005, R. R. S. 1943, provides for a more burdensome tax in the case of named remote relatives by blood or legal adoption. This section incorporates no one because of a marriage relationship. Finally section 77-2006, R. R. S. 1943, applies "In all other cases * * *."

Sections 77-2004 and 77-2005, R. R. S. 1943, set out those certain named parties who are excluded from the heavier tax of section 77-2006, R. R. S. 1943.

The rules of construction applicable here are: "* * * statutes exempting property from taxation should be

strictly construed, and one contending that his property is exempt from such tax must show clearly that he is within the exceptions provided by statute. * * * The same rule should be applied to a statute exempting certain legacies from an inheritance tax. To be exempt from an inheritance tax, a legacy must come within the strict letter of the statute." In re Estate of Rudge, 114 Neb. 335, 207 N. W. 520. See, also, In re Estate of Robinson, 138 Neb. 101, 292 N. W. 48.

"Courts should give to statutory language its plain and ordinary meaning." Foote v. County of Adams, 163 Neb. 406, 80 N. W. 2d 179.

It follows that Mr. Todd, to escape the higher tax burden of section 77-2006, R. R. S. 1943, must bring himself within the "husband of a daughter" classification. That he occupied that relationship from 1927 to 1932 is patent. That he did not occupy it after 1932 seems patent were it not for decisions upon which Mr. Todd relies. Accordingly we go to those decisions.

We take up first In re Ray's Estate, *supra*. The author of the opinion frankly states that he prepared the first two-thirds of the opinion before discovering that the tax exemption claimant had remarried and was living with a second wife. The first part of the opinion was written on the supposition that the testatrix and beneficiary were living together as mother and son. The opinion proceeds on the reasoning that "widower" would be a better designation of the claimant than "husband" and that "husband" or "surviving husband" means the same as widower. It is then argued that because the Legislature did not restrict the exemption to a husband whose wife was living that claimant came within the act. This reasoning assumes that the Legislature was required to exclude the claimant by specific language. On the contrary in this state he must show that he is included within the language of the exemption, for otherwise he comes within the "In all other cases" provision of section 77-2006, R. R. S. 1943.

The opinion next states that because the statute says "'wife' or 'widow' of a son" and says only "husband of a daughter" it was intended that the husband of a daughter was entitled to the exemption even though the daughter be dead because "both should be equally entitled to be exempted * * *." The opinion suggests that "no satisfactory reason can be urged" otherwise. Possibly the reason may be related to the ages-old promise of Ruth to Naomi: "* * * thy people *shall be* my people, * * *." Book of Ruth, c. 1, verse 16. But putting that aside, it is patent that the matter of the exemptions, to whom they apply, and the amount of the exemptions, is a legislative matter and not a judicial prerogative. The court in In re Ray's Estate, *supra,* treated it as a judicial prerogative.

After having found out that the claimant had remarried, the court arrived at the conclusion that the statute not having made remarriage a bar it did not intend to do so. Here again the court reverses the burden. Under our rules of construction the claimant must bring himself within the exemption. Our Legislature was not saying who was not exempt, but who was exempt from the higher tax burden of sections 77-2005 and 77-2006, R. R. S. 1943.

We have given the Ray case far more space than its merit deserves. We have done so because of the reliance that other courts and claimants here put upon it. We hold that this court is not bound by it nor are we persuaded that it is a sound precedent.

We have heretofore traced language comparable to our statutes back to the much earlier law of Pennsylvania. We now call attention to Commonwealth v. Power, *supra,* decided in 1866. There the statute provided exemptions to the "wife or widow of a son." Section 77-2004, R. R. S. 1943, uses this phrase. The court with reference to the meaning of widow said: "The word is so entirely and exclusively descriptive of an unmarried condition, having once been married, that

any other sense would be figurative." The court held: "To assert successfully a privilege or exemption against a general law, the party must bring him or herself clearly within the class exempted; * * *." That is our rule. The court held that a widow of a son, who remarried during the life of the testatrix (mother of son), was not entitled to the exemption. Here to sustain claimant it is necessary to first find that "husband of a daughter" includes "widower of a daughter" and that widower of a daughter includes a widower who has remarried.

The above is a decision of the Supreme Court of Pennsylvania and antedates the New York statute by 20 years and the New York decision by more than 25 years. If we are to follow the prior construction rule herein discussed, it would seem more reasonable to presume that our Legislature knew of the decision of the Supreme Court of Pennsylvania than that it knew of the then recent decision of a surrogate's court in a New York county. We do not extend the presumption to either case.

In re Rhead's Estate, 288 Mich. 220, 284 N. W. 706, involved the construction of the term "widow of a son." The widow had remarried. The court held that the term "widow" refers to the person and not the state or condition of the woman. The court construed the term to mean widow of a son who was deceased. The case is not precisely the one which we have before us. We are unable to follow the reasoning of the court. Clearly a "person" in the "state or condition" described in the statute must exist before the exemption applies.

In re Atherton's Estate, 333 Mich. 193, 52 N. W. 2d 660, involved the husband of a daughter who had remarried. The court there put aside In re Rhead's Estate, *supra*, as not materially helpful. The court following In re Ray's Estate, *supra*, and largely its reasoning, reached the conclusion that "husband of a daughter" included the widower of a deceased daughter. The court accepted the prior interpretation of the New York stat-

ute rule. The court refused to follow Canal Nat. Bank of Portland v. Bailey, 142 Me. 314, 51 A. 2d 482 (to which we refer later), because there the decision "seems to have turned" upon the fact that the claimant had remarried (as claimant did here) before the testator's death and therefore was not the "widower" of a daughter. To that extent the decision is in accord with the conclusion we reach here. The case finally turned on a construction that "husband" included "widower." If that be true, then "wife" includes "widow" and the term "or widow" must be held to be surplusage in our act. The Michigan court did not comment on that situation. We commend a reading of the dissenting opinion as being more in accord with our rules of construction and our construction of our act.

Claimant relies on Clay v. Edwards, 84 N. J. L. 221, 86 A. 548, which held that "husband of a daughter" meant husband of a living or deceased daughter and that subsequent remarriage did not affect the situation. The court relies almost entirely on the prior construction rule and In re Ray's Estate, *supra*. We see no reason to discuss it more.

Claimant relies also on In re Waters, 63 Ohio L. Abs. 34, 101 N. E. 2d 815. This is a decision of the probate court of Hamilton County. There the son of a testatrix predeceased the testatrix. His widow remarried before the death of the testatrix. The court seemed to recognize the validity of Tax Commission of Ohio v. Hirsch, 31 Ohio App. 325, 167 N. E. 400, to which we refer later. The case seems to have been decided on the difference in the act between "wife or widow of a son" and "husband of a daughter." We do not consider it to be of controlling persuasive force.

Claimant relies also on People v. Snyder, 353 Ill. 184, 187 N. E. 158, 88 A. L. R. 1012. There the language of the statute is the same as ours. There also the daughter died before the testator. Claimant, the husband, had not remarried. The court, pointing out that Illinois got

its statute from New York, applied the rule of prior construction by New York and held that the words "husband of the daughter" meant both "husband of a living daughter and husband of a deceased daughter." The court followed a rule of strict construction in favor of the taxpayer and not a rule, such as ours, in favor of strict construction against the exemption.

Appellants here rely on Canal Nat. Bank of Portland v. Bailey, *supra*. There the court followed a statutory rule of construction not unlike our rule as quoted from Foote v. County of Adams, *supra*. There the statute read "husband or widower of a daughter." The widower had remarried prior to the death of the testator. The court held that "a man ceases to be a widower when he marries again." That holding appears to be correct. The court referred to In re Ray's Estate, *supra*, and held that it disregarded well-established and accepted definitions. The judgment went against the claimant.

Calvert v. Fisher (Tex. Civ. App.), 259 S. W. 2d 944, involved a statute that referred to "wife of a son" and "husband of a daughter." It did not use the term "widow," as does our statute. In previous decisions the court had followed the reasoning that affinial relationships created by marriage survive the dissolution of such marriage by death, but do not survive if the marriage is dissolved by divorce. The court held that when the widower remarried he dissolved the affinial relationship created by his first marriage. In doing so the court refused to follow the authorities relied upon by claimant here and relied upon and followed Canal Nat. Bank of Portland v. Bailey, *supra*.

In Cahn v. Calvert (Tex.), 321 S. W. 2d 869, the married daughter of the settlor of a trust died. Her widower remarried. He was then divorced. The settlor of the trust then died. The widower claimed that he was the "husband of a daughter." The court held that he lost his status as the husband (widower) of a daughter by remarriage and that dissolution of the marriage by divorce

did not restore his former status. The court said: "A contrary holding would not simply involve giving the statute a liberal construction; it would involve a taking of liberties with the statute which its words all but prohibit."

We next refer to Tax Commission of Ohio v. Hirsch, *supra*. There the court traced Ohio's statute to New York and refused to follow the New York construction, pointing out that the Legislature was advised to include the term "widower of a daughter" in the language of the act. The court then pointed out: "We are asked to hold that the Legislature intended in the term 'husband of a daughter' to include both husband of a deceased daughter and husband of a living daughter, although in a previous line of the same section the Legislature specifically states, as applicable to the spouses of sons, 'the wife or widow of a son.' "

This is the exact situation presented by our statutes. The court refused to construe the language to include widower of a daughter.

We direct attention to our decision in Zimmerer v. Prudential Ins. Co., 150 Neb. 351, 34 N. W. 2d 750. In that case Judge Landis had been the brother-in-law of a litigant. Mrs. Landis had died prior to the litigation. The question was whether Judge Landis was related to Mrs. Landis' brother by affinity within the fourth degree. We held: "Affinity is the relationship which arises as a result of the marriage contract between one spouse and the blood relations of the other, in contradistinction from consanguinity or relationship by blood.

"Clearly, when Judge Landis married Miss Cattle, the relationship of affinity arose between him and Robert T. Cattle, her brother. In would seem that when that marriage was dissolved by the death of Mrs. Landis, the relationship of affinity with Robert T. Cattle likewise was dissolved, for the relationship by affinity rests upon a subsisting marriage, not a dissolved one. * * * The plain meaning of the word 'affinity' as used here implies

a relationship that begins and ends with the beginning and ending of the marriage relation. * * * To hold that Judge Landis was disqualified under the statute would be to add a disqualification that is not there. We are neither inclined nor authorized so to do."

Consistent with these decisions we hold that the relationship by affinity between Mr. Todd and Mrs. Thompson was dissolved by the death of Mrs. Thompson's daughter who was Mr. Todd's wife, and that the tax here is to be calculated on the basis of the rates provided in section 77-2006, R. R. S. 1943.

Claimant is concerned that such a holding will render meaningless the terms "husband" and "wife" in section 77-2004, R. R. S. 1943. He argues that where either dies there is no "wife" or "husband" to receive the benefits. We anticipate no difficulty with that contention should it be presented so as to require a determination of it.

The judgment of the trial court is reversed and the cause is remanded with directions to render a judgment affirming the judgment of the county court.

REVERSED AND REMANDED WITH DIRECTIONS.