UNION STOCK YARDS COMPANY, APPELLANT, v. NEBRASKA STATE RAILWAY COMMISSION, APPELLEE.

FILED MARCH 1, 1919. No. 20230.

1. **Statutes:** CONSTRUCTION. When a statute is susceptible of two constructions, under one of which it is clearly valid, while under the other its validity may be doubtful, that construction which makes sure its validity will ordinarily be given.

2. ————: CONSTITUTIONALITY: STOCK-YARDS. Section 134, Rev. St. 1913, construed to apply to all public stock-yards in the state, and, as thus construed, *held* not to deny to appellant the equal protection of the law under the Fourteenth Amendment.

3. **Stock-Yards:** REGULATION. Under its general police power, the state may regulate charges at public stock-yards.

4. ————: ————: CONSTITUTIONAL LAW. The legislature may delegate to the state railway commission power to fix and regulate charges at public stock-yards.

5. ————: RATES: VALIDITY. An order of the state railway commission fixing a charge to be made for corn furnished by a public stock-yards company to its patrons, which does not make allowance for the use of the property engaged in the service, as well as compensation for the corn furnished, *held* erroneous.

APPEAL from State Railway Commission. *Reversed.*

*Brown, Baxter & Van Dusen* and *Frank T. Ransom*, for appellant.

*Willis E. Reed* and *Clarence A. Davis, Attorney-Generals*, and *Hugh La Master, contra.*

MORRISSEY, C. J.

This is a proceeding, in the nature of an appeal, to vacate an order of the Nebraska state railway commis-

sion, fixing the rate which the Union Stock-Yards Company may charge for grain and feeding service at its yards in Omaha. The order was made under the authority of sections 134 and 135, Rev. St. 1913, which read as follows:

Section 134. "The term 'stock-yards' as used herein shall mean and embrace all corporations, individuals, associations of individuals, their lessees, trustees or receivers (appointed by any court of lawful authority, whatsoever), that now or hereafter may own, operate, manage or control any yards and pens, railroad tracks, switches, engines or other motive power, for the purpose of handling live stock in transit and for sale; and all stock-yards are hereby declared to be common carriers."

Section 135. "The state railway commission shall have power to issue orders regulating service and charges of all kinds at all stock-yards."

The stock-yards company insists that the order in this case is invalid because the provisions of the statute upon which it is based are unconstitutional. It is claimed that the sections set out deny to appellant the equal protection of the law, and constitute class legislation. The contention is that the statute in question does not allow the railway commission to regulate the service charges of all public feeding and shipping yards in the state, but only of those which also maintain common carrier facilities; that appellant is the only stock-yards company in the state doing a common carrier business; that this fact furnishes no basis for a classification in the regulation of yard or pen charges; and that it is therefore discriminatory to allow the fixing of service rates at appellant's yards, and not at those of other companies engaged in the same line of enterprise.

While it is true that section 134 may be susceptible of the interpretation placed upon it by appellant, it is equally capable of another and less questionable con-

103-Neb.—15

struction. No reason is apparent why the terms of this statute should not be read disjunctively, so as to subject to state regulation the service charges of all companies maintaining either feeding pens and yards, tracks, switches, or all of these facilities, "for the purpose of handling live stock in transit and for sale." There is nothing inharmonious with this view of the statute, unless it be the final clause of section 134, which provides that "all stock-yards are hereby declared to be common carriers." If, however, the power to regulate feeding charges at stock-yards cannot be conferred upon the railway commission, except by reason of a common carrier capacity, it cannot be conferred at all in this case, since mere legislative denomination cannot constitute an enterprise a common carrier. And certainly feeding, watering and caring for shipments of live stock, for an independent consideration, are not within the scope of a common carrier's duty, nor subject to regulation as such. *Union Stock Yards Co. v. United States,* 169 Fed. 404. Since the right of the state in this case must be determined without regard to the common carrier designation of the legislature, this provision of the statute may be disregarded.

The construction of the statute announced is effectuative of legislative intent, and will therefore be adopted in preference to that suggested by appellant. It is the policy of the courts to uphold rather than overthrow legislative action. Hence, sections 134, 135, Rev. St. 1913, cannot be said to violate the Fourteenth Amendment, by denying to appellant the equal protection of the law.

But though the statute in question is nondiscriminatory as between the stock-yards companies of the state, the question arises whether it is constitutionally within the power of the state thus arbitrarily to fix the charges in this particular line of business. That stock-yards are so affected with a public interest as to be subject to the inherent police power of the state, and

to a regulation of charges by governmental authority, seems to us uncontrovertible. *Ratcliff v. Wichita Union Stock Yards Co.,* 74 Kan. 1.

If, then, the state. has the power to regulate these charges, how may it exercise such power? Appellant urges that the fixing of rates is wholly a legislative function which cannot be delegated. While this is true as a general proposition, yet statutes delegating to an administrative commission power to fix rates for public service corporations have generally been held not to violate any principle of constitutional law. *State Public Utilities Commission v. Chicago & W. T. R. Co.,* 275 Ill. 555, Ann. Cas. 1917C, p. 50, and notes; *Village of Saratoga Springs v. Saratoga Gas, Electric Light & Power Co.,* 191 N. Y. 123, 18 L. R. A. n. s. 713, and notes, 14 Am. & Eng. Ann. Cas. 606, and notes following. In this state, however, the railway commission is a body organized under the Constitution for the purpose of supervising and regulating common carriers, and it is said that this constitutional authority cannot be extended by statute so as to make it an administrative body for the purpose of stock-yards regulation. But there is nothing in the constitutional duties of such commission incompatible with its serving as a body for the fixing and control of stock-yards charges. And, indeed, the legislature, having the power to create a body for this purpose, might well appoint the members of the railway commission to serve in such capacity.

We now pass to a consideration of the order itself. By the terms thereof the railway commission directed appellant to "determine the price of corn to be charged to. feeders of corn at its yards in South Omaha for the current calendar month, on the average price paid by said Union Stock Yards Company for the corn received at South Omaha for the calendar month immediately preceding the current month for which the price per bushel of corn is determined." In its

finding of fact the commission found: "In addition to the price paid for corn at South Omaha, there is an actual out-of-pocket cost to the applicant for the handling and placing of the corn in the feeding pens, which for the purpose of this temporary arrangement the commission places at ten cents per bushel. The amount just named may be added by the applicant to the price of the corn for the current month."

Thus it will be seen that under this temporary order, which on final hearing was made permanent, appellant was allowed no profit whatever for handling the corn, nor reimbursement for the use of the property employed in feeding and distributing the corn. It is suggested that in finding "out-of-pocket" cost, the commission took into consideration the value of the use of the property employed in feeding the corn, but the finding itself does not seem to bear out this contention. The company furnished proof of the usual charges in stock-yards in other states, and insists that that is *prima facie* proof of what is a reasonable rate in this case. The statute so provides. Rev. St. 1913, sec. 6127. An order that permits appellant to make a charge having regard for the market price, plus such sum as the commission may find from all the evidence will allow a proper net return on the investment, is more likely to do justice to all parties than an order based on a monthly average. Appellant is entitled to the value of its corn at the time of sale, without regard to what it may have cost at the time of purchase. If the price has advanced appellant is entitled to the advance. On the other hand, the shipper is entitled to have the market price taken as the basis, without regard to the price at which the corn may have been purchased at some remote date. The mere fact that the stock-yards, a month before, paid more for the corn than it is worth when sold to the shipper is no reason why he should be charged more than the commodity is worth on the day he buys.

The order in this case was made during the war period, when abnormal conditions were prevailing. In furtherance of justice the order is set aside and the cause remanded so that the commission may make such further investigation and enter such order as may be proper.

REVERSED.

CORNISH, J., not sitting.

The following opinion on motion for rehearing was filed May 3, 1919. *Former opinion modified, and rehearing denied.*

PER CURIAM.

On motion for rehearing our attention has been called to the following statement in the opinion:

"The company furnished proof of the usual charges in stock-yards in other states, and insists that that is *prima facie* proof of what is a reasonable rate in this case. The statute so provides. Rev. St. 1913, section 6127."

The point is made that the statute cited was passed in 1907 as part of the legislation applying to railroads, and that the stock-yards statute (Rev. St. 1913, 134-138) was not passed until 1911. It appears that section 6127 does not apply to stock-yards unless they are performing the functions of common carriers. Our opinion is modified to this extent, and the motion for rehearing is

OVERRULED.