Tamara **HATFIELD**, by her father and next friend, Samuel Hatfield, Appellant,

v.

**BISHOP CLARKSON MEMORIAL HOSPITAL, a Nebraska corporation,**

**John Harold George, Appellee.**

Nos. 81–2114, 82–1010.

United States Court of Appeals, Eighth Circuit.

Submitted April 23, 1982.

Decided June 17, 1982.

Rehearing and Rehearing En Banc Granted Aug. 13, 1982.

Richard J. Dinsmore, Omaha, Neb., for appellant.

Terry J. Grennan of Cassem, Tierney, Adams, Gotch & Douglas, Omaha, Neb., for appellee Bishop Clarkson Memorial Hospital.

Lyman L. Larsen and William M. Lamson, Jr., of Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for appellee John Harold George.

Before LAY, Chief Judge, and BRIGHT and ROSS, Circuit Judges.

LAY, Chief Judge.

The sole question in this case is whether a Nebraska statute of limitations on professional negligence actions is tolled during the infancy of an injured minor. A diversity suit was brought in federal district court in Nebraska alleging that Bishop Clarkson Memorial Hospital and Dr. John George negligently provided prenatal and postnatal care to Tamara Hatfield's mother after the mother was admitted to the hospital on August 25, 1965. The complaint alleges that Dr. George administered an excessive dose of the drug carbocaine to Mrs. Hatfield which affected the child's respiratory ability at birth; that the resultant lack of oxygen flow to the brain caused Tamara to be mentally retarded; and that Dr. George and hospital employees were negligent in taking inadequate measures to resuscitate the infant after birth.

The complaint was filed on January 31, 1979, more than 13 years after the alleged acts of negligence when Tamara was 13 years old. The defendants moved for summary judgment on the grounds that the suit was barred under a Nebraska statute establishing the period of limitation for professional negligence suits. The case was referred to a magistrate who recommended the motion be granted. The district court thereafter granted the motion. The plaintiff appealed. We reverse and remand for further proceedings.

Defendants rely upon Neb.Rev.Stat. § 25–222 (1979) which provides:

Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in

rendering or failure to render professional services providing the basis for such action; *Provided,* if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further, that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.*

(Emphasis added.)

The defendants urge the final proviso, barring any action commenced more than ten years after the act of negligence, is a "statute of repose" and thus plaintiff may not under any circumstances bring her action after ten years. Plaintiff, however, cites another provision of Nebraska law governing actions by infants and insane persons and argues it modifies the application of section 25–222 to this case, allowing her to bring the action within two years after her disability[1] is removed. Plaintiff relies on Neb.Rev.Stat. § 25–213 (1979) which reads as follows:

Except as provided in sections 76–288 to 76–298, *if a person entitled to bring any action mentioned in this chapter,* Chapter 23, article 24, and sections 81–8,209 to 81–8,239, except for a penalty or forfeiture, or for the recovery of the title or possession of lands, tenements or hereditaments, or for the foreclosure of mortgages thereon, *be, at the time the cause of action accrued, within the age of twenty years, insane or imprisoned, every such person shall be entitled to bring such action within the respective times limited by this chapter after such disability shall be removed,* and for the recovery of the title or possession of lands, tenements or hereditaments, or for the foreclosure of mortgages thereon, every such person shall be entitled to bring such action within twenty years from the accrual thereof, but in no case longer than ten years, after the termination of such disability. Absence from the state, death or other disability shall not operate to extend the period within which actions in rem shall be commenced by and against a nonresident or his representative.

(Emphasis added.)

It is undisputed that if section 25–213 is controlling, plaintiff's suit may proceed.

 The Nebraska courts have not addressed this issue[2] and we have not previ-

---

1. We analyze this case in relation to plaintiff's age. We need not determine if her mental status at the time her cause of action accrued rendered her insane under Neb.Rev.Stat. § 25–213. If it did, our analysis of the insanity issue would parallel our discussion concerning infancy.

2. Defendants rely on *Swaney v. Gage County,* 64 Neb. 627, 90 N.W. 542 (1902). We think this case is distinguishable and not supportive of defendants' argument. *Swaney* involved an action for injuries brought against a county under a special statute allowing suits against counties for injuries due to the county's failure to properly maintain roads or bridges. The statute itself provided a special 30-day period of limitation. Plaintiff alleged the accident caused him to be mentally incompetent and therefore claimed the 30-day period was tolled under a tolling statute which was the predecessor of section 25–213.

*Swaney* involved a statutory cause of action. As the court stated, the "act, which alone creates the plaintiff's right of action, limits the time within which such action could be commenced." *Id.,* 90 N.W. at 542. Finding that the limitation was an element of the legislatively conferred right, the court held that the Nebraska tolling statute did not alter its applicability. *Cf. The Harrisburg,* 119 U.S. 199, 214 [7 S.Ct. 140, 147, 30 L.Ed. 358] (1886) (limitation period contained in statutory cause of action is element of right).

The Nebraska court stated that limitations contained in statutory actions are not tolled in the absence of a savings clause within the statute itself. *Swaney,* 90 N.W. at 543–44. If this reasoning is applied to all actions at common law, the tolling provision, section 25–213 or its predecessor, would be rendered totally meaningless.

An action based on professional negligence or "malpractice" is a common law cause of

ously reviewed it.[3] Our function is not to choose the rule which we might follow if this were a question of federal law, but rather to adopt the rule which we believe the state court would apply, based upon what we perceive to be the sources of state law and the state court's methods of reaching decisions. *See Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 202–205, 76 S.Ct. 273, 275–277, 100 L.Ed. 199 (1956); *Putnam v. Erie City Manufacturing Co.*, 338 F.2d 911, 917–23 (5th Cir. 1964).[4]

■ We find section 25–213 modifies the application of section 25–222 in this case.

■ Section 25–213 tolls the running of the period of limitation for "any action mentioned in this chapter." Specific excep-

action. Section 25–222 simply places a period of limitation on commencement of such actions. Section 25–213 explicitly applies to actions mentioned in chapter 25; chapter 25 imposes periods of limitation on actions which exist independent of the chapter.

In *Swaney*, the court emphasized that the statutory cause of action at issue was created after the tolling statute was enacted. The court noted the tolling provision

must be held to have been adopted in contemplation of and with reference to liabilities and causes of action known and existing under the laws of this state at the time of its adoption, and which are classified under the several subdivisions of the chapter in which this section is found. This kind of an action was not known or recognized, and could not be maintained, under the laws of this state at that time.

*Id.*, 90 N.W. at 542. An action at common law for malpractice existed before the tolling provision was enacted. *Swaney* does not answer the question posed by this case.

3. Several state courts and one federal district court have addressed similar issues. *Compare Parlato v. Howe*, 470 F.Supp. 996 (E.D.Tenn. 1979); *Braden v. Yoder*, 592 S.W.2d 896 (Tenn. Ct.App.1979) (holding tolling provision modifies application of limitation provision) *with DeLay v. Marathon LeTourneau Sales & Serv.*, 291 Or. 310, 630 P.2d 836 (1981); *O'Connor v. Altus*, 67 N.J. 106, 335 A.2d 545 (1975); *Hill v. Forrest & Cotton, Inc.*, 555 S.W.2d 145 (Tex. Civ.App.1977) (holding tolling provision does not modify application of limitation provision).

4. We note that Nebraska has adopted a certification procedure effective July 17, 1982. Act of March 24, 1982, Neb.L.B. 724. Federal courts entertaining cases under their diversity jurisdiction should not mechanically certify all difficult state law questions. *See Lehman Brothers v. Schein*, 416 U.S. 386, 390–91, 394–95, 94 S.Ct. 1741, 1743–1744, 1745–1746, 40 L.Ed.2d 215 (1974); *Barnes v. Atl. & Pac. Life Ins. Co. of Am.*, 514 F.2d 704, 705 n.4 (5th Cir. 1975); *cf. Meredith v. Winter Haven*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943) (federal court in diversity may not remit plaintiff to state court merely because of difficulty in ascertaining state law). In *Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274–75 (5th Cir.),

*cert. denied*, 429 U.S. 829 [97 S.Ct. 88, 50 L.Ed.2d 92] (1976), the Fifth Circuit established guidelines for determining when certification is appropriate.

In determining whether to exercise our discretion in favor of certification, we consider many factors. The most important are the closeness of the question and the existence of sufficient sources of state law—statutes, judicial decisions, attorney general's opinions—to allow a principled rather than conjectural conclusion. But also to be considered is the degree to which considerations of comity are relevant in light of the particular issue and case to be decided. And we must also take into account practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.

(Footnotes omitted.)

There are several reasons why we are reluctant to refer this issue to the state supreme court. First, our court is now ready to decide this case. The parties have fully briefed the issue and orally argued it before the court. We believe we have sufficient resources to make a principled decision. Second, our decision in this case does not seriously invade the state's sphere of sovereignty. If the state supreme court ultimately faces the issue and resolves it contrary to our decision, our holding will only have relevance to the parties to this case. Third, certification would entail significant delay, not only because the state statute does not take effect until July 17, but also because of the crowded docket of the state supreme court. We do not believe the parties to this case should be required to experience such delay. *See Lehman Bros.*, 416 U.S. at 394–95 [94 S.Ct. at 1745–1746] (Rehnquist, J., concurring); *Florida ex rel. Shevin*, 526 F.2d at 275–76. If the issue was certified, the parties would then be given time to brief the case before the supreme court; they would then have to await calendaring for oral argument and decision. This could delay the progress of the case for months and possibly over a year. If the state court rules, as we do, that the trial should proceed, the case would ultimately be remanded for trial. In such event, valuable discovery time will have elapsed. Finally, no party requests certification.

tions are set forth within the statute. Professional negligence actions are not among the exceptions.[5] It is fundamental that when a statute is clear on its face, courts should apply the language of the statute without attempting to find meaning elsewhere. *See Ex parte Collett*, 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207 (1949) (and cases cited therein); *Lake County v. Rollins*, 130 U.S. 662, 670–71, 9 S.Ct. 651, 652–653, 32 L.Ed. 1060 (1889); *Gaffney v. State Department of Education*, 192 Neb. 358, 220 N.W.2d 550, 553 (1974); *Foote v. County of Adams*, 163 Neb. 406, 80 N.W.2d 179, 183 (1956). The legislature amended section 25–213 twice after the enactment of section 25–222, but did not explicitly include professional negligence actions among the exceptions to the provision. *See* Neb.Rev. Stat. § 25–213 (1979) (source note following text); *cf. Fox v. Standard Oil Co.*, 294 U.S. 87, 96, 55 S.Ct. 333, 337, 79 L.Ed. 780 (1935) (rejection of amendment evidence of intent).

■ If the final clause of section 25–222 is read literally and thus found to be an absolute prohibition, the two statutes command opposite results. However, if possible, related statutes should be read together so that neither will be rendered nugatory. *See Citizens to Save Spencer County v. United States Environmental Protection Agency*, 600 F.2d 844, 870–71 (D.C.Cir.1979) (and cases cited therein); *Seldin v. Northland Mortgage Co.*, 189 Neb. 175, 202 N.W.2d 174, 179 (1972).

The genesis of section 25–222 suggests that it does not conflict with section 25–213. Section 25–222 was enacted in 1972 and both codified and modified recent developments in the common law of medical malpractice. Prior to the enactment of section 25–222, medical malpractice actions were governed by a two-year statute of limitations. Neb.Rev.Stat. § 25–208 (1964). This

period of limitation created harsh results in cases in which negligence was not discovered within two years of the medical treatment. This result was initially modified in *Spath v. Morrow*, 174 Neb. 38, 115 N.W.2d 581 (1962). In *Spath*, the Nebraska Supreme Court evaded the severe mandate of the statute by holding that, when a foreign object is negligently left in plaintiff's body, the cause of action does not accrue until the object is discovered or reasonably could be discovered. 115 N.W.2d at 585. In *Acker v. Sorensen*, 183 Neb. 866, 165 N.W.2d 74 (1969), the Nebraska Supreme Court extended the holding of *Spath*. The court stated, "in a malpractice action against a physician, the statute of limitations does not commence to run until the time the act of malpractice with resulting injury was, or by the use of reasonable diligence could have been, discovered." *Id.*, 165 N.W.2d at 77.

Section 25–222 represents the legislature's response to this development. Enacted in 1972, it codifies the discovery rule, limiting the period during which an action can be brought after discovery to one year. But, in the final proviso of section 25–222, the legislature also limited the effect of the discovery rule.

■ Defendants argue that the final clause was intended to do more than prevent the discovery rule from enabling plaintiffs to bring actions more than ten years after the alleged negligence. Defendants cite the phrases, "in no event" and "any action," as evidence of the broad intent of the legislature. But the language of section 25–213 is equally inclusive, applying the exception to "a person entitled to bring *any action mentioned in this chapter.*" (Emphasis added.) The final clause of section 25–222 is one clause of a three clause provision and must be read in that context.[6]

---

5. None of the tolling statutes which were held not to toll comparable "statutes of repose," *see* note 3 *supra*, included specific exceptions as does section 25–213. *See* N.J.Stat.Ann. § 2A:14–21 (West 1981); Or.Rev.Stat. § 12:160 (1981); Tex.Stat.Ann. art. 5535 (Vernon 1981).

6. We note that the first clause is equally inclusive, applying the two-year statute of limitations to "[a]ny action to recover damages based on alleged professional negligence." But it is obviously modified by the next clause of the provision which contains the modified discovery rule. As a district court addressing a

The first clause contains the two year limitation. The second clause modifies the first by codifying the discovery rule. The third clause simply limits the impact of the discovery rule.[7]

Section 25–213 is not susceptible to a similar limiting construction. It modifies the application of the applicable time periods in "any action mentioned in this chapter" except for those specifically excluded. Professional negligence actions are not excluded. *Cf.* note 5, *supra.*

Defendants group section 25–222 with two subsequently enacted provisions creating similar limitation rules for actions for breach of warranty on or other deficiencies in improvements to real property, Neb.Rev. Stat. § 25–223 (1979) (enacted in 1976), and product liability actions, Neb.Rev.Stat. § 25–224 (1979) (enacted in 1978). They argue that these statutes evidence intent to limit certain classes of defendants' exposure to liability by precluding plaintiffs from bringing actions more than ten years after the defendants' alleged wrongful conduct (whether it be a professional act, improvement to real estate, or sale of a defective product). While this goal may be embodied in all three statutes, this fact alone does not reveal that the legislature intended to advance the goal of limiting liability at the expense of the strong and long-standing policy of protecting the rights of children and incompetents.[8]

The defendants cite the fact that the ten-year bar in section 25–224 applies "[n]otwithstanding . . . any other statutory provision to the contrary." Defendants argue that, given the parallel intent behind and similarity of these three sections, this explicit override is evidence that the legislature similarly intended the ten-year rule contained in section 25–222 to apply regardless of other provisions. However, we deem it more relevant that the legislature did not include a specific override provision in section 25–222 as compared to section 25–224. Once again, we find the actual language of sections 25–213 and 25–222 to be the most persuasive evidence of legislative intent.

■ The defendants urge that there is a sharp distinction between "statutes of limitations" and "statutes of repose." Defendants assert that the first two clauses of section 25–222 create statutes of limitations which begin to run when an action accrues, are tolled by nondiscovery, and bar the bringing of the action after the applicable time period has run. However, they contend that the final clause creates a statute of repose which begins to run when the alleged negligence occurs and prevents any actions from accruing after ten years. The meaning of these two terms is not as clear or distinct as defendants suggest.[9] What defendants label a statute of repose is primarily designed to limit the uncertainty created by the discovery rule by introducing a longer period of limitation which is initiated by the alleged negligence and not altered by lack of discovery. Otherwise, its effect on potential causes of action is no more absolute than those provisions which defendants label statutes of limitations.[10]

■ We find the plain language of section 25–213 controlling. The tolling statute

similar issue stated, "Statutes of limitations are usually phrased in absolute and general terms and thus the failure of the legislature to exempt minors specifically is not surprising." *Parlato v. Howe,* 470 F.Supp. 996, 998 (E.D.Tenn.1979).

**7.** Under the doctrine of *noscitur a sociis,* the meaning of words in a statute is generally known from accompanying words in the same statute. *See Tom and Jerry, Inc. v. Nebraska Liquor Control Comm'n,* 183 Neb. 410, 160 N.W.2d 232, 238–39 (1968); *Drainage Dist. No. 1 v. Kirkpatrick-Pettis Co.,* 140 Neb. 530, 300 N.W. 582, 588–89 (1941).

**8.** Section 25–213 was enacted in 1867. *See* Neb.Rev.Stat. § 25–213 (1979) (source note following text).

**9.** In *Spath,* a principal case in this area decided in 1962, the court wrote, "The statute of limitations [the old two year malpractice statute] is a statute of repose." *Id.,* 115 N.W.2d at 583. *See also United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979).

**10.** The legislative history reveals that several legislators and witnesses differentiated between statutes of limitations and statutes of repose, but it does not reveal that the majority thought that the running of the latter would not be stayed by infancy or insanity. The only reference to this issue is by lawyers who spoke in opposition to the statute and suggested that it might be construed to bar actions by infants. Obviously, opponents of a piece of legislation

for infants applies to all actions within the chapter, with the exception of those actions specifically excluded. However, even assuming the relationship between sections 25–213 and 25–222 is ambiguous, the text of the two statutory provisions, the historical rationale for their passage, and their legislative history are strong evidence that the legislature did not intend section 25–222 to be applied without modification by section 25–213. A contrary interpretation would create harsh results disfavoring relatively powerless classes of people and contradict the spirit, if not the letter,[11] of article I, section 13 of the Nebraska Constitution.[12]

We hold that section 25–213 tolls the application of section 25–222 in this case. Plaintiff's cause of action accrued while she was under 20 years of age. Under section 25–222 as modified by section 25–213, she could bring this action at any time before she reached age 20 or within two years thereafter.

We reverse the grant of summary judgment in favor of the defendants and remand the case to the district court.

ROSS, Circuit Judge, dissenting.

I would affirm the judgment of the district court on the basis of that court's opinion.

tend to exaggerate its flaws; their statements are poor evidence of legislative intent. *See Holtzman v. Schlesinger*, 414 U.S. 1304, 1313 n.13, 94 S.Ct. 1, 6 n.13, 38 L.Ed.2d 18 (1973) (Marshall, J., on application for stay); *Hardin v. Kentucky Utilities Co.*, 390 U.S. 1, 11, 88 S.Ct. 651, 657, 19 L.Ed.2d 787 (1968).

11. Plaintiff raises this and other constitutional issues for the first time on appeal. Although we will not decide questions not raised below, *Gardner v. Meyers*, 491 F.2d 1184, 1190 (8th Cir. 1974), we note that it is a common principal of statutory interpretation that statutes should be construed to avoid raising serious constitutional issues. *See In re Shirley's Estate*, 162 Neb. 613, 76 N.W.2d 749, 752 (1956); *Union Stockyards Co. v. State Ry. Comm'n*, 103 Neb. 224, 170 N.W. 908, 909 (1919).

12. Section 13 provides:
All courts shall be open, and every person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay.

We refuse to create such results in the absence of clear legislative direction to do so. *See Parlato v. Howe*, 470 F.Supp. 996, 999 (E.D.Tenn. 1979).

It is legitimate for this court to employ this type of presumption in interpreting a statute which regulates the relationships between a class of persons, professionals, who are politically powerful and were directly involved in the drafting and passage of section 25–222 and another class, children and insane people, who are politically impotent. *Cf. United States v. Carolene Products Co.*, 304 U.S. 144, 152–53 n.4, 58 S.Ct. 778, 783–784 n.4, 82 L.Ed. 1234 (1938) (stricter constitutional scrutiny of statutes which disadvantage "discrete and insular minorities"); 4 S. Williston, A Treatise on the Law of Contracts § 621, at 760–74 (W. Jaeger 3d ed. 1961) (contracts of adhesion construed against author). It is a rule of construction that remedial legislation such as section 25–213 should be liberally construed. *Peyton v. Rowe*, 391 U.S. 54, 65, 88 S.Ct. 1549, 1555, 20 L.Ed.2d 426 (1968); *United States v. Aetna Casualty & Surety Co.*, 480 F.2d 1095, 1100 (8th Cir. 1973).