701 F.2d 1266
 Tamara HATFIELD, By her father and next friend, Samuel
HATFIELD, Appellant,
v.
BISHOP CLARKSON MEMORIAL HOSPITAL, a Nebraska corporation,
John Harold George, Appellee. (Two cases.)
 Nos. 81-2114, 82-1010.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 15, 1982.
Decided March 17, 1983.
 
 Richard J. Dinsmore, Omaha, Neb., for plaintiff-appellant Tamara hatfield.
 Terry J. Grennan of Cassem, Tierney, Adams, Gotch & Douglas, Omaha, Neb., for appellee Bishop Clarkson Memorial Hospital.
 Lyman L. Larsen and William M. Lamson, Jr., of Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for defendant-appellee John Harold George.
 Woods, Aitken, Smith, Greer, Overcash & Spangler, Richard L. Spangler, Jr., Lincoln, Neb., for Drackett.
 Clay B. Statmore, Lincoln, Neb., for Macku.
 Before LAY, Chief Judge, and HEANEY, BRIGHT, ROSS, McMILLIAN, ARNOLD and JOHN R. GIBSON, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 This case comes before this court on rehearing en banc. As stated in the panel opinion "[t]he sole question in this case is whether a Nebraska statute of limitations on professional negligence actions is tolled during the infancy of an injured minor." Hatfield v. Bishop Clarkson Memorial Hosp., 679 F.2d 1258 (8th Cir.1982).
 
 Factual and Procedural History
 
 2
 This diversity action was brought in federal district court[1] in Nebraska alleging that Dr. John George and Bishop Clarkson Memorial Hospital negligently provided medical care to Tamara Hatfield's mother during and after Tamara's birth on August 25, 1965. The complaint alleged that Dr. George administered an excessive dose of the drug carbocaine to Mrs. Hatfield during delivery, which resulted in brain damage and mental retardation to Tamara. Plaintiff further alleged that Dr. George and hospital personnel were negligent in taking remedial measures to resuscitate the infant after birth.
 
 
 3
 The complaint was filed on January 31, 1979, more than 13 years after the alleged acts of negligence. Defendants moved for summary judgment on the grounds that the complaint was filed after the ten year statute of limitations provided for medical malpractice actions. Neb.Rev.Stat. Sec. 25-222 (1979). The district court granted defendant's motion for summary judgment. Plaintiff appealed asserting that Neb.Rev.Stat. Sec. 25-213 tolls the running of the ten year statute of limitations during a plaintiff's infancy. A panel of this court addressed the merits of this case and held that the infant statute did toll the running of the professional negligence statute. Upon reconsideration en banc, we decline to reach the merits and instead by an order filed this date, we certify the question to the Nebraska Supreme Court pursuant to Neb.Rev.Stat. Sec. 24-219 (Cum.Supp.1982).
 
 Discussion
 
 4
 The United States Supreme Court in Lehman Brothers v. Schein, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974) held that use of a state's certification procedure "rests in the sound discretion of the federal court." The Court determined that although a federal court was not required to resort to certification, certification was "particularly appropriate in view of the novelty of the question" and the unsettled nature of state law. Id. at 391, 94 S.Ct. at 1744. See also Clay v. Sun Insurance Office, 363 U.S. 207, 212, 80 S.Ct. 1222, 1225, 4 L.Ed.2d 1170 (1960). Because of the unsettled nature of Nebraska law on this issue and because a determination of this issue could be dispositive of this case, the issue is appropriate for certification to the Nebraska Supreme Court. Elkins v. Moreno, 435 U.S. 647, 668, 98 S.Ct. 1338, 1350, 55 L.Ed.2d 614 (1978).
 
 
 5
 In Barnes v. Atlantic & Pacific Life Ins. Co. of America, 514 F.2d 704, 705 n. 4 (5th Cir.1975) the Fifth Circuit stated that judgment and restraint are to be used in deciding whether to certify a question. However, the court welcomed the opportunity to certify a question of state law to the Alabama Supreme Court reasoning that
 
 
 6
 [w]hen the state law is in doubt especially on the underlying public policy aims, it is in the best administration of justice to afford the litigants a consistent final judicial resolution by utilizing the certification procedure.
 
 
 7
 Id. at 706. The same considerations exist in the present case. We are without guidance from the Nebraska courts as to the issue presented in this case. Neither the Nebraska courts nor this court have addressed the issue of the relationship between the infant tolling statute and the new medical malpractice statute of limitations. Additionally, the public policy aims involved in the statutes at issue are conflicting and are better analyzed by the state court than by this court. The function of a federal court is not to choose the rule which it might follow were this a question of federal law, but rather to adopt the rule which it believes the state court would apply. See Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 202-205, 76 S.Ct. 273, 275-277, 100 L.Ed. 199 (1956). Where we find no state law precedent on point and where the public policy aims are conflicting the case may properly be certified to the state court.
 
 
 8
 In Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943) the issue before the Supreme Court was whether the circuit court "rightly declined to exercise its jurisdiction on the ground that decision of the case on the merits turned on questions of Florida constitutional and statutory law which the decisions of the Florida courts had left in a state of uncertainty." Id. at 229, 64 S.Ct. at 8. The Supreme Court held that where federal jurisdiction is properly invoked it is the duty of the federal court to decide questions of state law. Id. at 234, 64 S.Ct. at 10. However, the Court explicitly recognized a federal court's option to
 
 
 9
 stay proceedings before it, to enable the parties to litigate first in state courts questions of state law, decision of which is preliminary to, and may render unnecessary, decision of the constitutional questions presented.
 
 
 10
 Id. at 236, 64 S.Ct. at 12 (citations omitted). The certification procedure is an alternative which effectuates just such a result.
 
 
 11
 The principle of avoiding a federal constitutional question by "secur[ing] an authoritative state court's determination of an unresolved question of its local law" is well established. Clay v. Sun Insurance Office, supra, 363 U.S. at 212, 80 S.Ct. at 1226. A ruling by the Nebraska Supreme Court could render unnecessary a decision by this court of the constitutional questions raised by plaintiffs and possibly a trial in the federal district court on the merits. Furthermore, the Supreme Court has recognized that certification is not the drastic procedure that the Court in Meredith v. Winter Haven, supra, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9, held abstention to be. Bellotti v. Baird, 428 U.S. 132, 151, 96 S.Ct. 2857, 2868, 49 L.Ed.2d 844 (1976). Here, certification would not deprive this court of jurisdiction, nor would it force the parties into state court, but rather would afford the parties a state forum for a state law question which process may obviate further extensive consideration by this court.
 
 
 12
 In State of Fla. ex rel. Shevin v. Exxon Corp., 526 F.2d 266, 274-75 (5th Cir.), cert. denied, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976) the Fifth Circuit established guidelines for determining when certification is appropriate. The court in Shevin refused to certify the question to the Florida Supreme Court because: (1) the legal question was not an "extremely close one"; (2) the court would not be "required to 'guess' state law from one or two questionable precedents" because the court had the benefit of a long line of Florida cases; and (3) the case "is primarily a federal case, and one which has not been 'lured' into federal court by means of the diversity jurisdiction." Id. at 275. Shevin is distinguishable because in the present case, (1) this court is without guidance from the Nebraska courts, (2) the case is not primarily a federal case but rather a strict diversity case, and (3) the legal question is close.
 
 
 13
 The Fifth Circuit stated that one consideration in determining whether to certify a question is "the likelihood of the recurrence of the particular legal issue." Id. at 275 n. 29. This factor is of particular importance in the present case. Currently pending before the Nebraska Supreme Court is a case in which the statutes and issues involved are identical to those presented here. Sacchi v. Blodig, No. 82-301. Some of the attorneys representing the parties in the present case are also briefing and preparing to argue Sacchi. If the Nebraska Supreme Court in Sacchi concludes that the ten year period of section 25-222 is not tolled by section 25-213 that ruling will require dismissal of the complaint in the present case. The state court ruling is binding on the federal courts and must be applied to this case regardless of the stage the case has reached. Vanderbark v. Owens-Illinois Co., 311 U.S. 538, 541, 61 S.Ct. 347, 349, 85 L.Ed. 327 (1941). This is an especially persuasive reason for certifying this issue as the expenses involved in discovery and trial of this case will be wasted if at any stage of these proceedings the Nebraska court rules that the ten year statute is not tolled.
 
 
 14
 Although we are aware of the possible delay which could result from certifying a question, Neb.Rev.Stat. Sec. 24-224 (Cum.Supp.1982) mandates that upon certification the case be expedited by the Nebraska Supreme Court for a prompt resolution of the issue so that justice not be delayed.[2] The argument that valuable discovery time will have elapsed carries little weight in light of the fact that plaintiff's parents waited thirteen years to file this action and it now has been more than seventeen years since the medical services were rendered. Valuable discovery time appears to have already passed. Delay in the factual context of the present case does not outweigh the significant principle of comity.
 
 
 15
 The fact that the district court did not certify this question does not bar this court from utilizing the certification procedure. First, the Nebraska certification statute did not become effective until July 17, 1982. Neb.Rev.Stat. Sec. 24-219 (Cum.Supp.1982). Thus, the certification procedure was not available to the district court at the time it considered the statute of limitations issue. Second, this court has in the past certified questions where the district court has failed or refused to employ that device. In Beilke v. Droz, 675 F.2d 194 (8th Cir.1982), the federal district court had granted defendant's motion for summary judgment holding that the applicable Iowa statute of limitations was two years. Notwithstanding the fact that the matter had been ruled on by the district court, this court certified the statute of limitations issue to the Iowa Supreme Court which promptly ruled on the question. This court then reversed and remanded the case for further proceedings consistent with the Iowa Supreme Court's ruling. Additionally, in National Steel Service Center v. Gibbons, 693 F.2d 817 (8th Cir.1982) the district court declined to certify a question of the correct application of strict liability in Iowa. Nonetheless, when the matter arose on appeal, this court certified the strict liability issue to the Iowa Supreme Court. The judgment was later affirmed according to the Iowa Supreme Court's decision. Although the better practice may be to refer matters to the state supreme court at the district court level, the circuit court is not barred from certifying a question where the district court declined to certify; particularly where the certification procedure was not available at the time the district court ruled.
 
 
 16
 Certification "in the long run save[s] time, energy, and resources and helps build a cooperative judicial federalism." Lehman Brothers v. Schein, supra, 416 U.S. at 391, 94 S.Ct. at 1741. For the reasons stated herein, by order filed this date, the issue in this case is certified to the Nebraska Supreme Court.
 
 
 17
 LAY, Chief Judge, with whom BRIGHT and McMILLIAN, Circuit Judges, join, dissenting.
 
 
 18
 I respectfully dissent. I cannot in good conscience join in the request for certification in Hatfield and Macku v. Drackett Products Co., No. 82-1150 (8th Cir.) filed this date. The majority opinion in requesting certification in this case to the Nebraska Supreme Court totally misconceives the certification process; furthermore, certification in the present case constitutes an abuse of the judicial process itself. The majority decision gives ringing truth to Justice Cardozo's aphorism of fifty years ago that "postponement of a remedy [can be] equivalent to a denial of justice altogether."[1]
 
 
 19
 Today four judges, without explanation, discard a fundamental rule of appellate procedure; we are obligated by longstanding judicial precedent, well settled in our own cases, that an appellate court should not decide any issue that the parties have not addressed in the trial court. E.g., Ludwig v. Marion Laboratories, Inc., 465 F.2d 114, 116-17 (8th Cir.1972); Sutton v. Settle, 302 F.2d 286, 288 (8th Cir.1962) (per curiam), cert. denied, 372 U.S. 930, 83 S.Ct. 876, 9 L.Ed.2d 734 (1963). In the present cases certification was not addressed in the district court because the Nebraska certification statute did not become effective until long after the present cases were briefed, argued, and the merits written upon in this court. This court now certifies questions of state law even though the district court had no opportunity to pass on that issue and the parties did not request certification in the lower court.
 
 
 20
 Hatfield was filed in federal district court on January 31, 1979. Final notice of appeal to this court was filed on December 28, 1981; pursuant to our goal to expedite a hearing in every case, the case was briefed and submitted by oral argument to a panel of this court in April of 1982. In an effort to expedite a ruling on an interlocutory issue, the panel filed its opinion within 60 days of oral argument. The defendants thereafter petitioned for a rehearing en banc on the merits and the case was then submitted to the full court on September 15, 1982. Now, some four years after the case was filed in the federal district court, over one year and two months after a notice of appeal was filed in this court and a panel heard and decided the case, by a vote of 4-3 this court rules that we should not decide the case. If the request for certification is accepted,[2] the parties must then file new briefs before the state supreme court, albeit in an "expedited" process. Thereafter, the court will add the case to its crowded docket, have it reargued (now for the third time), take it under advisement, and someday issue a written opinion to this court answering the certification question. We will then consider the supreme court's opinion, perhaps allow or require supplemental briefs, see National Steel Service Center v. Gibbons, 693 F.2d 817, 819 (8th Cir.1982),[3] and eventually issue an opinion on the merits. When this occurs we will be well into 1984 or perhaps into 1985, over five years from the time the parties sought an answer in the federal court system.
 
 
 21
 The majority's argument that the Nebraska Supreme Court will provide expeditious processing of certified cases misses the point. The unconscionable delay has already occurred in these cases in the federal district court and this court before certification was requested. For this court initially to request certification in Hatfield, in March of 1983, in a case which has been pending in federal court since January 31, 1979, borders on absurdity.[4]
 
 
 22
 The Supreme Court gave its imprimatur to certification in Lehman Brothers v. Schein, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). The Court noted certification could save time and resources and help build "a cooperative judicial federalism." Certainly, if the parties request certification of a difficult and unsettled question of law at an early stage of the litigation, it may save time and resources and I would endorse its use. However, in the instant cases none of the parties on their original appeals requested certification. When both cases were appealed to this court, the certification statute had not even been passed by the legislature. After a case has received full appellate briefing and argument and rehearing en banc on the merits (and opinions on the merits have been prepared) certification constitutes a total waste of judicial energies and a grave injustice to all parties. See Clay v. Sun Insurance Office, 363 U.S. 207, 224-27, 80 S.Ct. 1222, 1232-34, 4 L.Ed.2d 1170 (1960) (Black, J., dissenting) ("Litigants have a right to have their lawsuits decided without unreasonable and unnecessary delay or expense."); American Fidelity Bank & Trust Co. v. Heimann, 683 F.2d 999, 1002 (6th Cir.1982) ("Considering ... the inevitable delay inherent in the certification process, we conclude that this case is one which should be decided here and now.").
 
 
 23
 The majority states that any possible delay that may result from certification does not outweigh "the significant principle of comity." In all due respect such a contention in these cases stands the principle of comity on its ear. We are not obligated to certify every doubtful question of state law to the state supreme court. This court is competent to decide issues of state law pursuant to the diversity jurisdiction granted us by Congress. This court has applied ordinary principles of statutory construction to state statutes in hundreds of such cases throughout the years. To apply evenhandedly the principle of comity urged here, we should certify every issue of state law where there exists any good faith dispute about what the state law is. To do so would be to abandon our jurisdictional responsibility given to us by Congress. See Meredith v. Winter Haven, 320 U.S. 228, 234, 64 S.Ct. 7, 10, 88 L.Ed. 9 (1943). We cannot decline to exercise our jurisdiction simply on the basis that it is difficult to ascertain what the state courts may determine the law to be in the future. Id. By deciding these two cases we are not depriving the state court of its power, but merely determining the controversy immediately before us. The Nebraska Supreme Court may disregard our decision if it faces these issues and may interpret the statutes differently. Notwithstanding, I would rather be wrong than launch the parties in the name of comity on a new, circuitous merry-go-round enhancing the unconscionable delay that has already occurred.
 
 
 24
 Certification may be helpful when the issue to be decided is a close one and the state law is unsettled. However, I do not regard this as a difficult case; it is simply a matter of statutory construction. We have before us sufficient sources of state law "to allow a principled rather than conjectural conclusion." Florida ex rel. Shevin v. Exxon Corp., 526 F.2d 266, 274-75 (5th Cir.), cert. denied, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976). Further, this is not a case in which a ruling by the Nebraska Supreme Court would render unnecessary a decision by this court on a constitutional question. Regardless of certification, this court need not reach the plaintiffs' constitutional challenges. In Macku, the competing statutes can be construed so as to avoid reaching the plaintiff's equal protection challenge. In the Hatfield panel opinion the court rested its conclusion on common principles of statutory construction and did not reach the constitutional questions. Hatfield v. Bishop Clarkson Memorial Hospital, 679 F.2d 1258, 1264 n. 11 (8th Cir.1982).[5]
 
 
 25
 Certification in the present posture of these cases constitutes a basic unfairness to the litigants and counsel. Under Neb.Rev.Stat. Sec. 24-223 (Cum.Supp.1982) the parties are obligated to pay additional fees and costs in the Nebraska Supreme Court. Obviously, attorney's fees for the litigants are increased by this procedure. Furthermore, by certifying the cases at this time we completely violate the policies of judicial economy underlying the certification procedure. Much judicial time of this court has already been spent in the research and writing on the merits. We owe the litigants and the administration of justice more than we contribute now.
 
 
 26
 SEPARATE APPENDIX TO THE OPINION OF CHIEF JUDGE LAY
 
 An Exercise In Time and Music--A Fable[1]
 
 27
 The National Contest for the best original violin concerto was advertised for the year of 2001. The requirements were simple; the competitors had to be 25 years of age or under, and write and play their own composition at the National Finals to be held on December 31 of that year.
 
 
 28
 Wilhelm Virtuoso, against overwhelming odds, enthusiastically entered the contest. Wilhelm as a youngster had been in an unfortunate accident and as a result of the accident his physician said he would never use his right hand and arm again. Through his parents' persistent love, Wilhelm not only regained partial use of his extremity but regained such dexterity with his right hand that he learned to play a violin. His parents, who were exceedingly poor, devoted their life's earnings to provide violin lessons for him with the ultimate hope that he would some day enter and possibly win the National Contest for the best violin concerto. Wilhelm was 25 years old when he entered the contest. His written entry was required to be submitted by July 1. If his composition were chosen he would compete with other contestants on September 1 to receive one of the final four places for the December 31 finals. Wilhelm's composition, which took six months to write, was endorsed by the three judges and he was notified he had qualified to play his composition for the judges on September 1. Wilhelm devoted many hours to prepare for the playing of his composition. In preliminary practices he was superb. Finally on September 1 he competed against 11 other contestants. Wilhelm performed beautifully and everyone agreed he was destined for greatness.
 
 
 29
 On the judges' initial vote Wilhelm easily passed into the finals. There was, however, a much closer vote among the judges regarding the other three final contestants. The judges could not make up their minds and the National Contest Director notified them that unless the four contestants were named by December 1 the program would have to be postponed until the following year. The judges finally voted and named the four; Wilhelm was, of course, included. However, the week before the finals the judges worried over whether their selections were right and decided that they should review the compositions once again. This caused a good deal of consternation among the judges. Not only could they not agree on the contestants, but they could not decide whether new judges should review the compositions. The National Director declared the contest continued until the next year. In July of the next year the first stage of the 2002 contest was held and the judges agreed they would combine the finalists for the year 2001 with those to play in December 2002. In December of 2002 the judges were still reviewing the compositions for the year 2001 and once again the 2001 contest was postponed. It was then decreed the year 2001 contestants would appear in the finals for the year 2003. However, in 2003, the judges were so engaged with the contest for that year they forgot about the 2001 contestants and the 2001 contest was once again postponed until 2004. Finally in 2004 new judges reviewed the compositions and it was agreed that the same four finalists originally chosen in the year 2001 would play on December 31, 2004.
 
 
 30
 When Wilhelm's parents finally received the invitation for Wilhelm to play, they regretfully replied that they no longer could afford to send Wilhelm to the contest. The committee notified them, under the circumstances, they would finance Wilhelm's appearance. In response, however, Wilhelm, who was now almost 30 years of age, notified the committee that he had lost his violin two years before and was no longer interested in playing. He wrote that he had given up the idea of becoming a concert violinist and had decided he would be better off to become a music judge.
 
 
 
 [1]
 The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska
 
 
 [2]
 The public records of the Clerk of the United States District Court for the District of Nebraska reveal that in a recent case in federal district court in Nebraska, Judge Albert G. Schatz certified a Nebraska statute of limitations question to the Nebraska Supreme Court on November 8, 1982. Stone v. Mavis, No. 81-0411 (D.Neb.). The Nebraska Supreme Court granted certification on November 17, 1982, and its original briefing schedule required appellant's reply brief to be filed by February 8, 1983. The Nebraska Supreme Court follows the practice of setting the case for oral argument the month following the filing of the final brief. It is thus evident that the fears of extraordinary delay expressed by Chief Judge Lay do not stand up to strict scrutiny under the procedures of the Nebraska Supreme Court
 
 
 [1]
 Thomann v. City of Rochester, 256 N.Y. 165, 174, 176 N.E. 129, 132 (1931)
 
 
 [2]
 Under Neb.Rev.Stat. Sec. 24-222, the state supreme court has 60 days in which to accept the certification request
 
 
 [3]
 In National Steel as well as in Beilke v. Droz, 675 F.2d 194 (8th Cir.1982), the decisions of our court were both interminably delayed because of the use of certification. Prior to certification, these cases were pending decision in our court for almost a year; certification delayed the National Steel decision for two years after oral argument on the merits in this court and one year in Beilke. I would hardly agree that this represents a "prompt" or expeditious process
 
 
 [4]
 Macku was filed in the district court on May 13, 1981. A notice of appeal was filed on January 20, 1982, and the case was submitted to a panel on June 17, 1982. No panel opinion was filed and on the court's own motion the submission was vacated and the case was resubmitted to the full court on September 15, 1982. On rehearing en banc both parties urged this court to decide the case and not certify the question because of the delay involved. Pursuant to this court's order today the certification process will follow the same circuitous delay described above
 
 
 [5]
 Hatfield relates to professional malpractice, whereas Macku concerns the product liability statute of limitations, Neb.Rev.Stat. Sec. 25-224(4) (Cum.Supp.1982). The reasoning of the Hatfield panel opinion should govern the outcome of Macku. As stated in Hatfield, the language of Neb.Rev.Stat. Sec. 25-213 (1979) (infancy tolling provision) is clear on its face; it tolls the running of the period of limitation for "any action mentioned in this chapter." Specific exceptions are set forth but product liability actions are not among them. It is not disputed that Amy Macku is "a person entitled to bring [the] action" and was "within the age of twenty years" at the time the cause of action accrued. She is within the meaning of section 25-213 and should be allowed to file suit "within the respective times limited by this chapter after such disability shall be removed."
 The language of subsection 25-224(4) is equally clear on its face. "Notwithstanding the provisions of subsections (1) and (2) of this section" a person has two years from July 22, 1978, to file suit. Subsection (4) operates "notwithstanding" subsections (1) and (2) but there is no legislative expression that it is to operate independently of other governing statutes. Subsection 25-224(2), on the other hand, uses more comprehensive language: "Notwithstanding subsection (1) of this section or any other statutory provision to the contrary " (emphasis added) an action must be brought within ten years of the date the product was sold or leased for use. The explicit override of other provisions in subsection (2) and the absence of such an override in subsection (4) is a strong indication that the legislature implicitly considered the effect that other statutory provisions would have on subsection (4). There exists no evidence that the legislature purposefully intended to override the operation of the infancy tolling provision in subsection (4). Cf. Hatfield, 679 F.2d at 1263 (comparing the language and legislative intent underlying sections 25-222 and 25-224).
 The precise operation of section 25-213 requires that the limitations period be tolled for any action "mentioned in this chapter." Drackett argues that the legislature did not determine that the new product liability act necessarily was to be codified in chapter 25. The revisor of statutes, not the legislature, decides where a new act shall be codified. Drackett contends that the product liability statute cannot be made subject to the infancy tolling provision by its mere placement in chapter 25, but requires a legislative directive that the tolling provision should apply. I find this argument lacking in merit. Chapter 25 contains all the various statutes of limitation codified in the Nebraska statutes. It is logical that any new statute of limitations would be codified there and it must be presumed that the legislature knew the parameters of the existing law. See State v. Kock, 207 Neb. 731, 734, 300 N.W.2d 824, 825 (1981).
 
 
 [1]
 Fables are seldom found in legal opinions; I am confident some will say they should never be used. But see Memorial Hospital v. Maricopa County, 415 U.S. 250, 274, 94 S.Ct. 1076, 1090, 39 L.Ed.2d 306 (1974) (Douglas, J.). Justice Douglas borrowed his fable from other sources. In order to save time of research I have written my own